75 P.3d 944 (2003)
150 Wash.2d 197
Lynda BRECKENRIDGE, Petitioner,
Steven D. Uberti, as Guardian ad Litem of Angel Breckenridge and Brandy Breckenridge, minors; and Stephanie Gitts, Plaintiffs,
v.
VALLEY GENERAL HOSPITAL and Snohomish County Public District Hospital # 1 d/b/a Valley General Hospital; "John Doe" M.D. and "Jane Doe," husband and wife, Defendants,
Tomas Nowak, M.D. and "Jane Doe" Nowak, husband and wife, Respondents.
No. 73481-0.
Supreme Court of Washington, En Banc.
Argued June 12, 2003.
Decided September 4, 2003.
*946 Brewe Layman PS, Karen Moore, Sabrina Layman, Everett; Messina Bulzomi Law Firm, John Mesina, Cynthia Morgan, Tacoma, for Petitioner.
Williams Kastner & Gibbs, Mary Spillane, Margaret Sundberg, Seattle, for Respondents.
*945 BRIDGE, J.
Lynda Breckenridge was examined by Dr. Thomas Nowak in the emergency room for a severe headache. She later suffered a massive aneurysm in the occipital area of her brain. She then sued Dr. Nowak, maintaining that Nowak should have ordered a CT (computerized tomography) scan to rule out the possibility of a sentinel bleed, which often precedes a more devastating rupture.[1]
At trial, the jury unanimously concluded that Nowak had not committed medical malpractice in his treatment of Breckenridge. Breckenridge then moved for a new trial alleging juror misconduct. She claims that one of the jurors committed misconduct when he related his experiences with his wife's migraines during jury deliberations, comparing her symptoms to those of Breckenridge.[2] Breckenridge asserts that the juror's comments constituted extrinsic evidence regarding the standard of care that the jury may have relied on in reaching its verdict.[3] The trial court granted a new trial, but Division One of the Court of Appeals reversed, finding that the juror's statements pertained to his life experiences and therefore did not constitute misconduct. Because we find that *947 the juror's statements inhere in the verdict, we affirm.

I
Lynda Breckenridge had a history of migraine headaches. On November 19, 1996, she experienced a severe headache that began with a sudden neck pain and worsened after she had a cigarette. Despite her headache, Breckenridge went to work in the morning and then went shopping with a friend. Because her headache persisted, she visited the emergency room at Valley General Hospital that afternoon.
When Dr. Nowak, a board certified emergency medicine physician, saw Breckenridge upon her admission, Breckenridge's chief complaint was a "bad migraine." Report of Proceedings (RP) at 750. Her vital signs were normal. She reported some nausea and blurred vision, and that the onset of her migraines was not typically this sudden. In response to his questions about her past headaches, Breckenridge informed him that she had had several migraines of the same intensity in the past.
Nowak conducted a physical examination of Breckenridge. Upon manipulating her neck, he discovered her neck hurt equally with flexation and rotation.[4] She was able to squeeze his fingers strongly and easily, and had a normal gait. After the examination, Dr. Nowak concluded that Breckenridge was an "alert female who appears uncomfortable but who otherwise has normal affect and sensorium." RP at 758. He concluded that she was suffering from a migraine headache. Although he originally considered the possibility of bleeding in the brain, he ruled it out because Breckenridge's pain began in her neck rather than her head. He did not order a CT scan, but did treat her pain and nausea, and told her to return with any new or increasing symptoms.
After more than two hours in the emergency room, she was discharged feeling better than when she had arrived. Her headache pain dissipated overnight.[5] In a subsequent appointment with her primary care physician, Breckenridge did not complain of a headache. On December 5, 1996, Breckenridge ruptured an aneurysm in the left temporal occipital area of her brain.
In October 1999, Breckenridge and her children filed suit against Nowak in Snohomish County Superior Court, alleging that he negligently diagnosed a migraine headache rather than ordering a CT scan to rule out the possibility of a sentinel bleed. The case was tried to a jury. Upon questioning during voir dire, two of the jurors replied that they had personal experience with migraine headaches. Juror De Rosia disclosed that she had a personal history of migraines. Juror Corson disclosed that his wife had a history of migraine headaches and that he had accompanied her to the emergency room for treatment of her headaches on several occasions. He was questioned about his wife's symptoms and her treatment.[6] Both jurors were allowed to remain on the jury.[7]
At trial, the parties each called a neurology and an emergency room expert to testify about the standard of care and whether Breckenridge's symptoms were typical of her usual migraines. The experts agreed that if Breckenridge's November 19 headache was typical of her earlier migraines, the standard of care did not require Nowak to order a CT scan. They disagreed, however, about whether Breckenridge's headache was typical *948 or atypical for her.[8] The jury unanimously found that Nowak was not negligent in his treatment of Breckenridge.
Breckenridge moved for a new trial, arguing based on the declaration of Juror Temple that both Juror Corson and Juror De Rosia committed misconduct by introducing extrinsic evidence into the jury deliberations. According to Temple's declaration, De Rosia stated during deliberations that when she had a migraine, she had to lie down and could not do anything. This comment was made in the course of arguing that Breckenridge's headache could not have been very severe since she went shopping and to work that day. Temple further asserted that Corson told the jury that "his wife had gone to emergency rooms several times with symptoms similar to those experienced by Lynda Breckenridge on November 19, 1996, and that never was a CT scan ever discussed or done on his wife." Clerk's Papers (CP) at 69.[9] According to Temple, Corson used these experiences to support his opinion that Nowak had complied with the standard of care in his treatment of Breckenridge.
The trial court found that De Rosia's statement constituted "the use of common universal knowledge or life experience to test the evidence that was admitted." CP at 15. Therefore, De Rosia did not commit misconduct when she discussed her experiences during deliberations. However, regarding Corson's statement, the trial court found that it constituted extrinsic evidence that could have affected the verdict and granted a new trial.[10] Nowak appealed.
In an unpublished opinion, Division One of the Court of Appeals reversed the trial court, holding that Corson's statement was not misconduct because it pertained to his personal life experiences. Breckenridge v. Valley Gen. Hosp., No. 49426-1-1, slip op. at 10, 114 Wash.App. 1058, 2002 WL 31743000 (Wash.Ct.App. Dec.9, 2002). Breckenridge sought this court's review, which we granted. We now affirm.

II
Deciding whether juror misconduct occurred and whether it affected the verdict *949 are matters for the discretion of the trial court, and will not be reversed on appeal unless the court abused its discretion. State v. Balisok, 123 Wash.2d 114, 117, 866 P.2d 631 (1994); Halverson v. Anderson, 82 Wash.2d 746, 752, 513 P.2d 827 (1973). "A strong affirmative showing of misconduct is necessary in order to overcome the policy favoring stable and certain verdicts and the secret, frank and free discussion of the evidence by the jury." Balisok, 123 Wash.2d at 117-18, 866 P.2d 631. A trial court abuses its discretion when its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). Greater weight is owed the decision to grant a new trial than the decision to deny a new trial. Richards v. Overtake Hosp. Med. Ctr., 59 Wash.App. 266, 271, 796 P.2d 737 (1990), review denied, 116 Wash.2d 1014, 807 P.2d 883 (1991).
The Court of Appeals found that Corson's statements related to his personal life experiences rather than being extrinsic testimony about the standard of care and therefore did not constitute misconduct. Breckenridge, slip op. at 10.[11] We agree that Corson's statements constituted his personal life experiences rather than extrinsic evidence. Corson's use of his experience with his wife's migraine headaches to evaluate the evidence presented at trial is what jurors are expected to do during deliberations. There was no misconduct.
However, it is unnecessary to make this determination. Corson's statements inhered in the verdict.[12] Because a trial court may not consider postverdict juror statements that inhere in the verdict when ruling on a new trial motion, the trial court abused its discretion by granting a new trial.
Appellate courts will generally not inquire into the internal process by which the jury reaches its verdict. Gardner v. Malone, 60 Wash.2d 836, 840, 376 P.2d 651 (1962); Richards, 59 Wash.App. at 270, 796 P.2d 737. "The individual or collective thought processes leading to a verdict `inhere in the verdict' and cannot be used to impeach a jury verdict." State v. Ng, 110 Wash.2d 32, 43, 750 P.2d 632 (1988). Thus, a juror's postverdict statements regarding the way in which the jury reached its verdict cannot be used to support a motion for a new trial. Id. at 44, 750 P.2d 632. In Gardner, this court set forth the test for determining whether evidence of misconduct inheres in the verdict: "One test is whether the facts alleged are linked to the juror's motive, intent, or belief, or describe their effect upon him.... Another test is whether that to which the juror testifies can be rebutted by other testimony without probing the juror's mental processes." 60 Wash.2d at 841, 376 P.2d 651.
In Cox v. Charles Wright Academy, Inc., 70 Wash.2d 173, 176, 422 P.2d 515 (1967), the defendant in a personal injury suit argued that it was error for the trial court to have granted additur or, in the alternative, a new trial. The plaintiff supported his motion for an increase in the verdict with a juror's affidavit discussing the way that the jury had calculated the damage award in the case.[13] *950 Id. This court found that the affidavit contained statements that inhered in the verdict, stating:
The mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs, are all factors inhering in the jury's processes in arriving at its verdict, and, therefore inhere in the verdict itself, and averments concerning them are inadmissible to impeach the verdict.
Id. at 179-80, 422 P.2d 515. The Cox court went on to note that to hold otherwise would be to allow nearly all verdicts to be attacked by the losing party. Id. at 180, 422 P.2d 515.
Here, although the trial court excluded various portions of Temple's and Corson's declarations based on its assessment that they inhered in the verdict, the court did not omit the following statement from Temple's declaration:
[Corson] argued that other emergency room doctors would have behaved in the very same fashion as Dr. Nowak had and supported his position from personal experience. During deliberations he cited the experiences of his wife, who suffers from migraines. Mr. Corson told the jury that his wife had gone to emergency rooms several times with symptoms similar to those experienced by Lynda Breckenridge on November 19, 1996, and that never was a CT scan ever discussed or done on his wife. He used that experience to argue that, since other doctors behaved in that fashion in similar circumstances with his wife, Dr. Nowak must have met the standard of care. He made reference to this argument at least three times and, upon repeating his statements, prefaced his remarks, "Again I keep coming back to my wife's experiences," or substantially similar language.
CP at 69. This statement explains Corson's reasons for weighing the evidence in the case the way that he did and for believing that Nowak was not liable. Because Corson felt that his wife's symptoms were similar to Breckenridge's and his wife had not been given a CT scan, Corson believed that Nowak was not negligent in his diagnosis and treatment of Breckenridge. As in Cox, the statement attributed to Corson explains this juror's mental process in reaching his conclusion, a factor inhering in the jury's process in arriving at its verdict.

III
When considering a motion for a new trial, the trial court may not consider a juror's postverdict statements that explain the reasoning behind the jury's verdict as such statements inhere in the verdict. Temple's declaration contained comments made by Corson during deliberations that explained Corson's reasons for believing that Nowak was not liable. Because this statement inhered in the verdict, the trial court abused its discretion when it granted a new trial. We affirm the Court of Appeals.
ALEXANDER, C.J., and JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.
NOTES
[1] Patients with aneurysms sometimes experience small ruptures in their blood vessels, called sentinel bleeds, which forecast more massive ruptures to come. Patients with sentinel bleeds typically complain of severe headaches that start suddenly and neck stiffness. Ninety to 95 percent of these hemorrhages are discovered by current CT scan technology and the remaining five to 10 percent can be found by a spinal tap. Report of Proceedings (RP) at 269.
[2] At trial, Breckenridge also claimed that another juror engaged in misconduct, but the trial court rejected her argument. Breckenridge does not challenge that ruling on appeal to this court.
[3] Extrinsic evidence is "information that is outside all the evidence admitted at trial, either orally or by document." Richards v. Overtake Hosp. Med. Ctr., 59 Wash.App. 266, 270, 796 P.2d 737 (1990), review denied, 116 Wash.2d 1014, 807 P.2d 883 (1991); see also State v. Balisok, 123 Wash.2d 114, 118, 866 P.2d 631 (1994). It is jury misconduct for jurors to interject extrinsic evidence into the jury deliberations, as such evidence is not subject to objection, cross examination, explanation, or rebuttal. Balisok, 123 Wash.2d at 118, 866 P.2d 631. Jurors may, however, rely on their personal life experience to evaluate the evidence presented at trial during the deliberations. Richards, 59 Wash.App. at 274, 796 P.2d 737. In determining whether a juror's comments constitute extrinsic evidence rather than personal life experience, courts examine whether the comments impart the kind of specialized knowledge that is provided by experts at trial. See State v. Carlson, 61 Wash.App. 865, 878, 812 P.2d 536 (1991); State v. Briggs, 55 Wash.App. 44, 58, 776 P.2d 1347 (1989).
[4] One of Nowak's experts testified that flexing and rotating the head is a way to test for nuchal rigidity, one of the symptoms of a possible sentinel bleed.
[5] One of Breckenridge's experts testified that one of the characteristics of a typical migraine is that it is relieved by a night's rest.
[6] Although voir dire was not reported, Corson's and the defense attorney's declarations indicate that Corson was asked about his wife's symptoms, emergency room visits, and treatment. In addition, the trial court recalled that Corson had disclosed his wife's migraines and emergency room visits during voir dire.
[7] There is no allegation that either juror answered untruthfully when questioned on voir dire. Nor does it appear that either party requested that either juror be removed for cause. In his declaration, Breckenridge's attorney asserted that they had "insufficient peremptory challenges to remove all the jurors, about whom we had concerns." Clerk's Papers (CP) at 64.
[8] For example, Breckenridge's neurology expert thought that her November 19 headache was not typical because it began in her neck and its onset was sudden. Nowak's neurology expert, however, concluded that Nowak was correct in his assessment that Breckenridge was suffering from one of her usual headaches.
[9] Corson does not dispute the accuracy of Temple's declaration. In his own declaration, Corson stated that he told the jury during deliberations that he had been to the emergency room with his wife and that the defense's evidence regarding the standard of care was consistent with his experiences.
[10] Specifically, the trial court found the following:

16. Juror Kevin Corson related to other jurors during deliberations that his wife had gone to emergency rooms several times with symptoms similar to those experienced by Lynda Breckenridge on November 19, 1996, and never was a CAT scan discussed or done on his wife.
17. The statements of Juror Kevin Corson related to specific emergency room visits and the actions of the doctors involved in those visits and were not admitted during trial and were outside the recorded evidence.
18. The statements of Juror Kevin Corson related in Finding No. 16 were not subjected to normal cross-examination, explanation or rebuttal by either party, so that the jury could have properly evaluated Juror Corson's evidence.
19. The statements of Juror Kevin Corson related in Finding No. 16 conveyed information beyond the common knowledge and general life experiences of jurors in general and even jurors with experience with migraine headaches.
20. The statements of Juror Kevin Corson, as stated in Finding No. 16, constituted extrinsic evidence in the context of, and for the purpose of supporting or buttressing the testimony of defendant's experts and refuting the testimony of plaintiffs' experts.
21. Whether symptoms like sudden onset, severity, and nuchal rigidity are indications of a possible sentinel bleed that require a CAT scan is highly specialized information that requires expert testimony.
22. Juror Kevin Corson's comments directly contradicted the testimony of one of plaintiffs' experts who stated in testimony to the effect of 100 out of 100 doctors faced with Lynda Breckenridge's symptoms would have or should have ordered a CAT scan.
23. The issue of whether a CAT scan should have been ordered was contested and the evidence on this issue was equally balanced and sharply divided between the expert witnesses of the two sides.
24. The juror misconduct by Juror Kevin Corson could have affected the verdict.
CP at 16-17.
[11] Comparing Corson's conduct to that of the juror in Richards, the Court of Appeals below found that Corson's comments had "less potential for injecting extrinsic evidence into the deliberations" than those of the Richards juror. Breckenridge, slip op. at 10. In Richards, the juror disclosed during voir dire that she was an occupational therapist who had medical training. Richards, 59 Wash.App. at 269, 796 P.2d 737. During the jury deliberations, she used her medical knowledge to analyze whether the plaintiff's birth defects were caused by the mother's illness during the pregnancy rather than by medical malpractice. Id. Upholding the trial court's refusal to grant a new trial, the Richards court held there was no extrinsic evidence introduced and thus no misconduct. Id. at 273, 796 P.2d 737. Similarly, the Court of Appeals below found that "[Corson's] statements during deliberations merely detailed the life experiences he discussed during voir dire." Breckenridge, slip op. at 10.
[12] The Court of Appeals brief discussion of this issue is puzzling, as the opinion states: "The trial court found Corson's statements did not inhere in the verdict because they introduced extrinsic evidence that could have affected the verdict." Breckenridge, slip op. at 9. Whether a statement inheres in the verdict is a separate inquiry from whether it is extrinsic evidence.
[13] The juror's affidavit stated that "`the verdict was arrived at by merely adding medical bills submitted by the plaintiff....'" Cox, 70 Wash.2d at 176, 422 P.2d 515. Based on this statement, the plaintiff argued that the jury had limited its award to out-of-pocket medical expenses and had failed to award any general damages for pain and suffering.