

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72141-1-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| DARREN MORRIS-WOLFF, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: February 1, 2016 |
|  | ) |  |

Cox, J. — Darren Morris-Wolff appeals his judgment and sentence for residential burglary. The trial court did not comment on the evidence when it instructed the jury that violation of a court order "may or may not" be a crime against a person, depending on the facts and circumstances of the violation. Morris-Wolff fails to establish that he can argue for the first time on appeal that the trial court erred by answering a jury question during deliberations. And the court did not abuse its discretion by denying his motion for a curative instruction made after the jury had begun to deliberate. Likewise, the denial of his motion for a new trial does not require reversal. There was no cumulative error. We affirm.

Darren and Lisa[1] Morris-Wolff were married and had two children. After an altercation, Lisa obtained a series of protection orders against him. These

---

[1] We adopt the State's naming convention and refer to Lisa Morris-Wolff as "Lisa" to avoid confusion.

orders prohibited Morris-Wolff from contacting either Lisa or their children and from being within 500 feet of the family home.

Subsequently, Morris-Wolff repeatedly called and sent text messages to Lisa. Lisa did not answer the calls, but she responded to a single message stating: "[Our] [k]ids do need you and [are] proud of you, too. Please stop texting and calling. It isn't the right way to resolve this and can only get you into trouble."[2]

Morris-Wolff testified at trial that he believed that Lisa's response, telling him not to contact her by phone, was an invitation to talk to her in person. Thus, he went to her home on August 14, 2013, despite the fact that a protection order prohibited him from doing so. Hoping to avoid being seen by neighbors, he parked away from the house and approached the side of the house. He saw Lisa and called out to her. She ran inside and called 911.

According to his testimony, once Morris-Wolff realized that Lisa was calling 911, he "freaked out."[3] Realizing he was likely going to jail, he decided to speak with his children. He wanted them to know that he loved them and that he was not abandoning them when he was arrested for violating the protection order against their mother. Deciding to do so immediately, he broke down the door to the house, while Lisa watched his intrusion. He went inside, and spoke to his children.

Based on this incident, the State charged Morris-Wolff with a number of offenses, including residential burglary. At his first trial, the jury found Morris-

[2] Report of Proceedings (June 10, 2014) at 140.

[3] Report of Proceedings (June 12, 2014) at 101.

2

Wolff guilty of some charges, not guilty of others, and could not reach a verdict on the residential burglary charge.

The State elected to retry him on only the residential burglary charge based on the August 14, 2013 incident. At the second trial, the jury found him guilty of residential burglary.

Morris-Wolff appeals.

## COMMENT ON THE EVIDENCE

Morris-Wolff argues that the court erroneously instructed the jury that violation of a court order "may or may not" be a crime against a person, depending on the facts and circumstances of the violation. He claims this was a comment on the evidence. We disagree.

Article IV, section 16 of the Washington constitution prohibits judges from commenting on the evidence. A court does so "if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement."[4]

A proper jury instruction is not a comment on the evidence.[5] But if an instruction "essentially resolve[s] a contested factual issue" then it is an improper comment on the evidence.[6]

The question is whether the challenged jury instruction either communicates to the jury the court's attitude toward the merits of the case or

---

[4] State v. Lane, 125 Wn.2d 825, 838, 889 P.2d 929 (1995).

[5] State v. Brush, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).

[6] Id.

resolves a disputed factual issue. Notably, resolution of a disputed legal issue is not within the scope of the constitutional prohibition.

Under RCW 9A.52.025, "A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling . . . ."

Whether a crime qualifies as a crime against property under this statute is a question of law.[7] Similarly, whether a crime is a crime against a person is also a question of law.[8]

Here, the challenged jury instruction states that "A court order violation *may or may not* be 'a crime against a person' depending on the facts and circumstances of the violation."[9] This instruction did not resolve a contested factual issue. The plain words of the instruction address the possible legal effect of a court order violation. Likewise, the instruction does not communicate the court's attitude toward the merits of the case. It is not an improper comment on the evidence.

The State's theory of the case was that Morris-Wolff intended to commit one of two crimes—assaulting Lisa or violating a no-contact order—when he unlawfully entered the home. Accordingly, the court's other instructions defined both assault and violation of a no-contact order.

We note that the State proposed the instruction at issue because the jury in the first trial had repeatedly asked the court whether a violation of a no-contact

---

[7] State v. Kindell, 181 Wn. App. 844, 851, 326 P.3d 876 (2014).

[8] State v. Stinton, 121 Wn. App. 569, 574, 89 P.3d 717 (2004).

[9] Clerk's Papers at 249 (emphasis added).

4

order was a crime against a person. In response to the State's proposal at this trial, Morris-Wolff argued that the State's proposed instruction would be a comment on the evidence. Specifically, he claimed that it singled out one of the two crimes that the State alleged Morris-Wolff intended to commit.

Addressing Morris-Wolff's concerns, the court offered to also instruct the jury that assault qualified as a crime against a person. Additionally, the trial court noted that it was more obvious that assault was a crime against a person, compared to violation of a no-contact order, which the trial court characterized as a more "abstract" crime.

Morris-Wolff did not respond to the court's offer to instruct the jury that assault also qualified as a crime against a person. The court then gave the instruction he now challenges.

For the reasons the trial court identified, it was proper to instruct the jury on whether violation of a no-contact order was a crime against a person. Giving the instruction was designed to avoid confusion of this jury, a possibility that the first trial suggested was likely in this trial. Moreover, this instruction neither communicates the court's view of the merits of the case nor resolves a factual— as opposed to a legal—issue. In fact, it does not even resolve the legal issue: the possible effect of violation of a court order.

Morris-Wolff argues that the instruction implicitly suggests that the State proved violation of a court order. It does no such thing. Rather, it neutrally states that it "may or may not be 'a crime against a person,'" depending on the circumstances. And the court instructed the jury on the elements of violation of a

5

court order, indicating that that it was the jury's role to determine whether Morris-Wolff intended to violate a court order.

For these reasons, we reject this unpersuasive argument.

## ANSWER TO JURY QUESTION

For the first time on appeal, Morris-Wolff argues that the court improperly answered a question from the jury during its deliberations. Specifically, he argues that the court's answer to a jury question was inconsistent with its other written instructions given before closing arguments. Because he did not preserve this claim by arguing it below, and also fails to show that he may raise this issue under RAP 2.5(a), we do not reach it.

Before answering the jury's question during deliberations, the court gave both parties the opportunity to review the proposed answer. The record shows that the State reviewed the proposed answer and concurred that it was proper. The record does not show that Morris-Wolff addressed the court's proposed answer either by way of objection or otherwise. The court then gave the proposed answer in response to the jury's question. Accordingly, there was no preservation of any objection to the proposed answer.

This court generally does not review issues first raised on appeal.[10] But an appellant may raise an issue for the first time on appeal if it is a manifest error affecting a constitutional right under RAP 2.5(a).[11] "Criminal law is so largely constitutionalized that most claimed errors can be phrased in constitutional

---

[10] RAP 2.5(a).

[11] State v. Kalebaugh, 183 Wn.2d 578, 583, 355 P.3d 253 (2015).

terms."[12] Thus, to raise an issue for the first time on appeal, an alleged error must be both constitutional and manifest.

Under RAP 2.5(a), courts ask two "gatekeeping" questions: "(1) Has the party claiming error shown the error is truly of a constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest?"[13]

A manifest error "'requires a showing of actual prejudice.'"[14] "To demonstrate actual prejudice, there must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'"[15]

Here, Morris-Wolff does not address RAP 2.5(a) in his opening brief. And his reply brief does not fully address why his claim falls within RAP 2.5(a)'s narrow exception. Specifically, he fails to argue why this alleged error is manifest. Thus, we do not reach the merits of his unpreserved argument.

## CURATIVE INSTRUCTION AND NEW TRIAL MOTION

Morris-Wolff next makes two related arguments. He first argues that the trial court erroneously denied his request for a curative instruction while the jury deliberated. He next argues that the court abused its discretion by denying his motion for a new trial following the guilty verdict. Underlying both arguments is his contention that the prosecutor committed misconduct during closing

---

[12] State v. Lynn, 67 Wn. App. 339, 342, 835 P.2d 251 (1992).

[13] Kalebaugh, 183 Wn.2d at 583.

[14] Id. at 584 (alteration in original) (internal quotation marks omitted) (quoting State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)).

[15] Id. (internal quotation marks omitted) (quoting O'Hara, 167 Wn.2d at 99).

argument. We hold that the court did not abuse its discretion by failing to give a curative instruction because Morris-Wolff failed to request one before the beginning of deliberations. Additionally, the court did not abuse its discretion by denying Morris-Wolff's motion for a new trial because the evidence he relied on inhered in the jury's verdict.

### Curative Instruction

Morris-Wolff argues that the court abused its discretion by declining to give the jury a curative instruction. We disagree.

To prevail on a claim of prosecutorial misconduct, the defense must establish that the prosecutor's conduct was both improper and prejudicial.[16]

During closing argument, prosecutors have "wide latitude to draw and express reasonable inferences from the evidence."[17] But prosecutors may not "make prejudicial statements that are not sustained by the record."[18]

We review a trial court's ruling on alleged prosecutorial misconduct for abuse of discretion.[19]

During closing argument, Morris-Wolff argued that he did not enter the house to assault Lisa on August 14, 2013. He argued that he intended to see his children. According to his testimony, he wanted them to know that he loved them

---

[16] State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

[17] State v. Reed, 168 Wn. App. 553, 577, 278 P.3d 203 (2012).

[18] State v. Dhaliwal, 150 Wn.2d 559, 577, 79 P.3d 432 (2003).

[19] State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014); State v. Stenson, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997).

and that he was not abandoning them when he was likely to be arrested for violating the protection order against their mother.

In rebuttal, the prosecutor stated:

This isn't a circumstance where [Morris-Wolff] went to the kids' daycare, all right. He didn't go to the kids' school, all right. Although the testimony was that he was familiar with those processes, all right, he lived there and he went to the same daycare and the same school and he certainly did not go on August 14th as defined in State's Exhibit 8, the order for protection that Lisa asked for, to the supervised visitation that was ordered with his children.[20]

At this point, Morris-Wolff objected on the basis that the argument was misleading. The court overruled the objection.

The prosecutor later repeated the argument:

Because while Lisa followed a court process, she petitioned for a protection order, the defendant didn't show up for those hearings. He had supervised visitation.[21]

Morris-Wolff objected again on the basis that the argument was misleading. This time, the court sustained the objection. Notably, Morris-Wolff did not then request any curative instruction after the court sustained the second of his two objections. The prosecutor finished his rebuttal, and the jury left the courtroom to begin its deliberations. At this time, Morris-Wolff stated that he intended to research the remedy for the prosecutor's allegedly misleading statements during closing.

After the parties returned from recess and while the jury was deliberating, Morris-Wolff asked the court to give the jury a curative instruction. He asked that

---

[20] Report of Proceedings (June 16, 2014) at 63.

[21] Id. at 64.

9

the court "instruct the jurors that between July 5, 2013 and August 14, 2013, Mr. Morris-Wolff was not legally permitted to visit[] with his children supervised or unsupervised because of the existence of the no-contact order."[22]  Morris-Wolff argued that this instruction was necessary to cure the State's misleading statements during closing about visitation.  In the alternative, he asked the court to instruct the jury to disregard the State's argument on supervised visitation.

The court denied these requests for alternative curative instructions.  The court stated, among other things, that such instructions would likely confuse the jury.  The court determined that it would confuse the jury to receive a new instruction because the court had informed the jury that they would not receive any further instructions.  The court also determined that the jury might not understand the term "supervised visitation" and that visitation was not "what this case [was] about," so the jury could give the instruction undue weight.[23]  The court further noted that it would be "extremely risky" to give the jury another instruction when counsel would not be able to argue it to the jury.[24]

We conclude that the primary focus of Morris-Wolff's argument is whether the trial court properly denied his request for alternative curative instructions while the jury deliberated.  He does not appear to complain that the trial court sustained only the second of his two objections to the prosecutor's allegedly misleading argument.

---

[22] Id. at 69.

[23] Id. at 72.

[24] Id.

10

Here, it was not an abuse of discretion for the court to deny his requests for curative instructions. The record is clear that Morris-Wolff first requested curative instructions while the jury deliberated, not before.

For the reasons the trial court identified, giving the jury a curative instruction could have confused the jury. Morris-Wolff could have immediately requested curative instructions upon the court sustaining his second objection to the prosecutor's argument. But he did not do this. Instead, he waited until after the jury had begun deliberating. That was simply too late. The court did not abuse its discretion by declining to give the jury a curative instruction during its deliberations.

### Motion for a New Trial

Morris-Wolff also argues that the court should have granted his post-verdict motion for a new trial based on the prosecutor's allegedly misleading closing argument. Because the evidence that he relied on inhered in the jury's verdict, we disagree.

After the verdict, Morris-Wolff moved for a new trial under CrR 7.5, arguing that the State's allegedly misleading closing argument necessitated a new trial. Morris-Wolff supported this motion with a declaration from his counsel. His counsel stated that he spoke to the jurors after trial. Several jurors indicated that they were surprised that the protection orders prohibited Morris-Wolff from attending supervised visitation with his children. And one juror "stated that the

fact that [Morris-Wolff] had not been attending the supervised visits was a "'nail in the coffin.'"[25]

We review for abuse of discretion a trial court's decision on a motion for new trial.[26] "A trial court abuses its discretion if a decision is manifestly unreasonable or based on untenable grounds or untenable reasons."[27]

"Appellate courts will generally not inquire into the internal process by which the jury reaches its verdict."[28] Thus, evidence that inheres in the verdict cannot support a new trial.[29]

"One test is whether the facts alleged are linked to the juror's motive, intent, or belief, or describe their effect upon him; if so, the statements cannot be considered for they inhere in the verdict and impeach it."[30] Jurors' erroneous beliefs about facts or the law inhere in the verdict.[31] "[T]he effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence" also inhere in the verdict.[32]

---

[25] Clerk's Papers at 265.

[26] State v. Hawkins, 181 Wn.2d 170, 179, 332 P.3d 408 (2014).

[27] Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1, 177 Wn.2d 718, 730, 305 P.3d 1079 (2013).

[28] Breckenridge v. Valley Gen. Hosp., 150 Wn.2d 197, 204, 75 P.3d 944 (2003).

[29] Id.

[30] Gardner v. Malone, 60 Wn.2d 836, 841, 376 P.2d 651, 379 P.2d 918 (1962).

[31] Id. at 842.

[32] Breckenridge, 150 Wn.2d at 205 (quoting Cox v. Charles Wright Academy, Inc., 70 Wn.2d 173, 179-80, 422 P.2d 515 (1967)).

Here, when Morris-Wolff moved for a new trial, the evidence he relied on inhered in the jury's verdict. His counsel's declaration went to the jurors' beliefs about facts in the case and the effect those beliefs had on their deliberations. The court did not abuse its discretion when it denied his motion for a new trial.

## CUMULATIVE ERROR

Morris-Wolff finally argues that cumulative error requires reversal. Because any errors here did not deny him a fair trial, we disagree.

Where several errors standing alone do not warrant reversal, the cumulative error doctrine requires reversal when the combined effects of the errors denied the defendant a fair trial.[33]

Here, as described earlier, the court did not err or abuse its discretion. Thus, we reject this argument.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

Trickey, J.

---

[33] State v. Davis, 175 Wn.2d 287, 345, 290 P.3d 43 (2012).