IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WILLIAM J. JOHNSTON and MARY KAY BECKER, | ) ) | No. 40642-3-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JUNG S. PEACH and the ESTATE OF MATTHEW W. PEACH, | ) ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| JOHNSTON-PEACH LLC, a Washington limited liability company, | ) ) | |
| | ) | |
| Co-Respondent. | ) | |

COONEY, J. — This appeal concerns the distribution of proceeds from the ordered

sale of real property, the distribution of settlement proceeds from the prior owners of the

real property, and the trial court's award of attorney fees. Finding no error, we affirm.

BACKGROUND

Spouses Bill Johnston and Mary Kay Becker (collectively "Johnstons") each owned a 25 percent interest in a commercial building located at 401 Central Avenue, Bellingham, Washington (Property). Matthew Peach owned the remaining 50 percent interest. Mr. Peach later conveyed 25 percent of his interest in the Property to his wife, Jung Peach.

In 2007, the Johnstons and Peaches formed the Johnston-Peach, LLC (LLC). The four members of the LLC were Mr. Johnston, Ms. Becker, Mr. Peach, and Ms. Peach, each holding a 25 percent interest. Mr. Johnston and Mr. Peach were named co-managers, with each possessing the right to "continue to serve as manager" on the death or disability of the other. Clerk's Papers (CP) at 871. The Johnstons and the Peaches conveyed their interest in the Property to the LLC. The parties, as members of the LLC, did not enact bylaws, hold meetings, or solicit capital contributions. Expenditures for the Property were paid directly from the members' personal funds. In 2012, the LLC was administratively dissolved.

Prior to the parties' purchase of the Property, the previous owners of the Property had installed underground storage tanks to store petroleum products related to their garbage hauling business. It was discovered in 2011 that oil had been leaking from the underground storage tanks, contaminating the soil beneath the Property. In 2013, Mr. Peach and Mr. Johnston initiated cleanup of the Property in compliance with the Model

2

Toxics Control Act (MTCA), chapters 70A.305 and 82.21 RCW, and retained attorney Holly Stafford to seek contribution from the prior owners for the costs associated with the remediation. Mr. Johnston and Mr. Peach equally divided the cost of the cleanup and legal fees, each contributing from their personal funds. The cleanup commenced in August 2013 and extended over the next decade, with excavation and remediation work under the Washington State Department of Ecology's (DOE) cleanup program.

Mr. Peach died in July 2019 leaving Mr. Johnston as the sole manager of the LLC under the terms of the "Operating Agreement." CP at 875. Thereafter, Ms. Peach failed to respond to Mr. Johnston's request that she contribute to the ongoing costs of remediation and legal work. Initially, the Estate of Matthew Peach (Estate) contributed a minimal amount, then all contributions for cleanup and legal work ceased after Ms. Peach became personal representative of the Estate. Consequently, Mr. Johnston funded the remaining costs associated with the cleanup and legal fees.

In April 2022, the Johnstons filed a complaint against Ms. Peach, the Estate (collectively "Peaches"), and the LLC, seeking to dissolve the LLC, to partition in kind and divide the ownership of the Property, and to divide the responsibility for the costs of cleanup, among other relief. The Johnstons later amended their complaint, seeking, among other relief, reimbursement for remedial costs under the MTCA, and for "an order finding that the [Peaches] have been unjustly enriched for Bill Johnston's uncompensated work and financial contributions." CP at 55.

In January 2023, the DOE issued a "No Further Action" letter regarding the Property. Ex. 39. A No Further Action letter is issued when the DOE is satisfied that a contaminated property has been sufficiently remediated. In March 2023, Attorney Stafford achieved a $270,437.79 settlement of the MTCA contribution claim. The Johnstons' lawsuit against Ms. Peach, the Estate, and the LLC proceeded to a bench trial in July 2023.

At trial, evidence was presented that (1) the Property contained leaking underground storage tanks, (2) Mr. Peach and Mr. Johnston authorized the removal of the leaking tanks, (3) the removal of the tanks and site assessment cost $97,027.50, and (4) the Property would have been substantially devalued had Mr. Peach and Mr. Johnston not proceeded with the remediation.

The Johnstons' attorney asserted that the unjust enrichment claim was based on the increased value of the Property due to the effort and expense Mr. Johnston incurred in cleaning up the Property. Evidence was presented that the LLC entered the DOE's "Voluntary Cleanup Program" and that Whatcom Environmental Services conducted a series of cleanup efforts that were reviewed by a DOE appointed site manager. Evidence was admitted as to the No Further Action letter ultimately issued by the DOE.

The LLC's accountant testified that the liabilities and income of the LLC were split "50-50," and there were no issues paying the expenses before Mr. Peach's death. Rep. of Proc. (RP) at 372. These expenses included the cost of removing the storage

tanks, legal fees, payments to Whatcom Environmental Services, and payments to the DOE. The accountant testified that Mr. Peach contributed $97,619.74, which included half of the cost of the initial removal of the underground oil tanks. After Mr. Peach's death, the Estate contributed $12,421.00 to the expenses. Evidence was presented that additional payments totaling $103,000.00 were paid to Attorney Stafford, Whatcom Environmental Services, and the DOE after Mr. Peach's death. These payments "weren't paid one-half by the Estate or [Ms. Peach]." RP at 383.

Attorney Stafford testified that she represented the LLC throughout the remediation of the Property and reached a $270,437.79 settlement with the prior owners of the Property. Attorney Stafford acknowledged that if her fees were not paid, there would come a point "where we would stop work" on the case. RP at 210.

Evidence was presented that the Property was worth $1,391,000 in its remediated condition. The Johnstons presented evidence that the Property was valued at $761,000 in its contaminated state. The Peaches presented evidence that the Property was worth $991,000 in its contaminated state and that the Property was still capable of generating income. The Peaches introduced evidence that the cost of remediation was approximately $318,162.11 and that the appraised "stabilized value" was $1,425,000. RP at 483, 501.

Mr. Johnston testified that "[t]here was no recognition of the LLC in the 15, 20 years . . . after it was formed," the members "never had any meetings," the LLC was formed for protection, and he never thought it was binding. RP at 676.

At the conclusion of the trial, the court issued its findings of fact and conclusions of law. The court found, in part:

> 14. The Johnston-Peach LLC was formed in February 2007. The four current owners of 401 Central signed an Operating Agreement ("Operating Agreement") and were members of the LLC. The specific purpose for which the LLC was organized was "to own and operate a building located at 401 Central Avenue, Bellingham, WA, 98225, for a law office for Johnston and Peach leasing unused space in the premises to others." The operating agreement named Johnston and [Mr. Peach] as co-managers of the LLC and provided that upon the death or disability of either of the managers, the remaining manager "shall continue to serve as manager."
>
> . . . .
>
> 16. On June 1, 2012, the LLC was administratively dissolved. Since that time the LLC has been nothing but a shell. There were no by-laws, no formal meetings, votes, minutes, or solicitation of capital contributions. Monthly expenditures, even large costs such as oil remediation bills, were seen as the individual responsibility of the members and were paid directly from personal funds. This process was not complicated and was in no way informed by the Operating Agreement. Although the Operating Agreement contained detailed provisions for capital solicitations and income distribution to its members, these provisions were never followed.
>
> 17. Since its dissolution 2012, the sole legitimate purpose of the LLC has been winding up under RCW 25.15.297(1). Since this time, the LLC has been obligated to discharge its liabilities, settle and close its activities, and marshal and distribute its assets.

CP at 871.

The court found that Mr. Johnston was the member of the LLC vested with management responsibility after Mr. Peach's death and was obligated to wind up the affairs of the LLC. The court found there was no equitable basis for partition in kind of the Property. Further, the court determined that the Property should be liquidated by sale, its liabilities and remaining bills settled, and the proceeds of the sale should be distributed according to each's ownership interest after the Johnstons' judgment is satisfied. The court concluded:

> 24. The oil remediation settlement ($270,437.79) is inextricably tied to the oil remediation work done at 401 Central and is an asset of the LLC subject to distribution. The Court rules that [the Peaches are] entitled to a share from the settlement proceeds proportionate to their ownership interest in the LLC and amounts shall be distributed accordingly. Prior to distribution [the Peaches'] aggregate shares shall be reduced by amounts owing for back remediation work, plus reasonable attorneys' fees pursuant to the MTCA award.

CP at 872. Additionally, the court determined that both Mr. Peach and Mr. Johnston initiated the oil remediation activities under the MTCA, and managed the remediation, dividing the bills equally through the expenditure of their personal funds. The court found Mr. Peach and Mr. Johnston were acting on behalf of themselves and their marital communities. The court found the remediation was successfully completed in 2023 when the DOE issued a No Further Action letter and that Mr. Johnston and Mr. Peach equally contributed from their own personal funds to pay Attorney Stafford's attorney fees.

The court further found that the LLC's "corporate veil" had been pierced, thereby creating a duty of the parties to contribute to the costs of the remediation. CP at 874. The court found that after Mr. Peach died, Mr. Johnston paid the entire cost of remediation costs and legal fees. The court concluded:

> 39. As "owners," [the Peaches] must contribute one-half of the remedial and legal costs incurred and paid for by [Johnstons] after [Mr. Peach's] death, plus interest at 12% on those expenses. As of February 28, 2023, the total amount of [Ms. Peach's] withheld contributions, plus prejudgment interest, was $54,080.21. The [Peaches] are liable to Johnston for this amount. After February 28, 2023, invoices continued to come in and Johnston continued to pay them. The [Peaches] are liable to Johnston for one half of such additional invoices.

CP at 874. The court also found the Johnstons had proved their claim under the MTCA, entitling them to attorney fees.

In evaluating the unjust enrichment claim, the court found that under the terms of the LLC Operating Agreement, Mr. Johnston acted in his capacity as a member-manager when he pursued the remediation and the settlement award. The court determined that the Johnstons did not "have an equitable interest in that portion of the increased value at 401 Central to which the Estate of Matthew Peach or [Ms. Peach] would otherwise be entitled." CP at 875. The court concluded:

> 44. [The Johnstons] have failed to carry their burden of showing that [Ms. Peach] and/or the Estate of Matthew's Peach will be unjustly enriched by sharing in the in 401 Central's increase in value and the contribution settlement award according to their respective LLC ownership interests.

45. [The Johnstons] have likewise failed to carry their burden to show that the doctrine of unjust enrichment entitles Johnston to compensation for past work he performed on the LLC's behalf.

46. To the extent that any inequities resulted from the discrepancy between the payments for oil remediation and associated legal services [. . .] such inequities are fully and completely addressed by the Court's award for the principal amount of this difference, accrued interest, and reasonable attorney fees.

CP at 875.

The court found that neither party prevailed for purposes of awarding attorney fees for the claims brought under the Operating Agreement.

The Johnstons appeal.

ANALYSIS

The Johnstons contend the trial court erred in finding that Ms. Peach was not unjustly enriched through Mr. Johnston's efforts and expenditures in remediating the Property and sustaining the MTCA contribution claim, and in concluding that Mr. Johnston was acting as a member-manager of the LLC. The Johnstons further argue the trial court erroneously limited their award of attorney fees. Both the Johnstons and Ms. Peach seek an award of attorney fees on appeal.

UNJUST ENRICHMENT

When the issue concerns the legal standard applied by the trial court in an unjust enrichment claim, the court reviews the issue de novo. *Young v. Young*, 164 Wn.2d 477, 483, 191 P.3d 1258 (2008). We review de novo "the court's conclusions of law by first

determining whether the court applied the correct legal standard to the facts." *Rasmussen v. Bendotti*, 107 Wn. App. 947, 954, 29 P.3d 56 (2001). Conclusions of law necessarily involve factual determinations made by the court. *Id.*

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young*, 164 Wn.2d at 484. "A person has been unjustly enriched when he has profited or enriched himself at the expense of another contrary to equity." *Dragt v. Dragt/DeTray, LLC*, 139 Wn. App. 560, 576, 161 P.3d 473 (2007). Contracts implied in law are based on the equitable principle of unjust enrichment. *Id.*

The enrichment of one party, alone, does not trigger the doctrine of unjust enrichment. *Id*. Rather, to prevail under the doctrine, "the enrichment must be unjust under the circumstances and as between the two parties to the transaction." *Id*. Three elements must be proved for a party to prevail on a claim of unjust enrichment: "(1) there must be a benefit conferred on one party by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit; and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value." *Id*. "Unjust enrichment encompasses the doctrine of quantum meruit." *Id*. at 576-77. The doctrine of quantum meruit provides a remedy for restitution, allowing a party to recover the value of "the benefit conferred upon the defendant." *Id*.

10

*Appreciated Value of the Property*

The Johnstons contend the trial court erred in not awarding them the entirety of the Property's full appreciated value, resulting in Ms. Peach being unjustly enriched. We disagree.

The Johnstons correctly assert that trial courts possess substantial discretion to fashion a remedy to prevent unjust enrichment. *Young*, 164 Wn.2d at 487-88. Notwithstanding the trial court's broad discretion, the Johnstons, relying on *Leinweber v. Leinweber*, 63 Wn.2d 54, 385 P.2d 556 (1963), and *Leake v. Hayes*, 13 Wash. 213, 43 P. 48 (1895), argue the court erred in finding that Ms. Peach had not been unjustly enriched by Mr. Johnston's efforts and expenditures in remediating the Property.

In *Leinweber*, the Washington State Supreme Court held that a cotenant of property is entitled to the increased value of the property in an action for partition when that cotenant enhances the value of the property from the "sweat of his brow." 63 Wn.2d at 58. In *Leake*, the Supreme Court held that the trial court "should not have awarded a partition of the premises without first having ascertained the value of appellants' improvements thereon." 13 Wash. at 219. There, the Supreme Court reasoned that though one tenant in common cannot recover for improvements placed on the estate without consent of their cotenant, "a court of equity will not, 'if it can avoid so inequitable a result, enable a cotenant to take advantage of the improvements for which he has contributed nothing.'" *Id.* (quoting Freem. Coten. 2d Ed. § 509).

*Leinweber* and *Leake* are distinguishable.  First, both cases addressed the unjust

enrichment of a cotenant.  Here, the parties are not cotenants as they do not own the

Property; the Property is owned by the LLC.  Any appreciation in the value of the

Property benefited the LLC.

Secondly, "'[t]he mere fact that a person benefits another is not of itself sufficient

to require the other to make restitution therefor.'" *Chandler v. Washington Toll Bridge

Authority*, 17 Wn.2d 591, 601, 137 P.2d 97 (1943) (quoting RESTATEMENT OF THE LAW

OF RESTITUTION, p. 13, § 1(c)).  Ms. Peach was arguably enriched, as a member of the

LLC, by Mr. Johnston's efforts and expenses in remediating the Property between July

2019 and January 2023.  Nevertheless, any enrichment conveyed on Ms. Peach was not

unjust under the circumstances.  Unlike *Leinweber* and *Leake*, here, the trial court

employed the equitable doctrine of quantum meruit and granted judgment in favor of the

Johnstons for the expenses they incurred in finalizing the cleanup of the Property, along

with accrued interest and attorney fees.

Moreover, granting the Johnstons the full appreciated value of the Property would

disregard Mr. Peach's contribution to the cleanup.  Remediation of the Property spanned

10 years, commencing in August 2013 and concluding in January 2023 when the DOE

issued a No Further Action letter.  From the time the cleanup began through Mr. Peach's

death in July 2019, Mr. Johnston and Mr. Peach equally managed the remediation and

contributed to its cost.

After Mr. Peach's death, the Estate made minimal contributions toward the cleanup. Mr. Johnston independently managed and funded the cleanup until January 2023. Notwithstanding Mr. Peach's and Mr. Johnston's joint efforts and expenses that spanned almost seven years, at trial, the Johnstons sought the entirety of the approximately $650,000 appreciated value of the Property rather than an amount proportionate to the effort and expense Mr. Johnston independently contributed. Awarding the Johnstons the Property's full appreciated value would overlook the efforts and expenses incurred by the Peaches between August 2013 and July 2019. Such an award would be unjust.

The trial court's conclusions of law are supported by its findings of fact, which, in turn, are supported by substantial evidence. The trial court correctly applied the doctrine of unjust enrichment and, under its broad discretion, did not err in granting judgment in favor of the Johnstons under the doctrine of quantum meruit rather than awarding them the full appreciated value of the Property.

*Settlement of MTCA Contribution Claim*

The Johnstons contend the trial court erred in awarding Ms. Peach a portion of the settlement obtained from the MTCA contribution claim because Mr. Johnston "shouldered the entire risk and the burden of paying [Attorney Stafford] to keep pursuing contribution from the former owners." Br. of Appellants at 29. The Johnstons claim the court's distribution of the settlement unjustly enriched Ms. Peach. We disagree.

13

Mr. Johnston and Mr. Peach jointly retained Attorney Stafford in September 2013, equally splitting and paying her fees from their personal funds. After Mr. Peach's death in July 2019, Mr. Johnston paid for Attorney Stafford's services until she reached a $270,437.79 settlement with the prior owners in March 2023. At trial, the Johnstons requested the court award them the entire $270,437.79 settlement.

The trial court found the Johnstons and the Peaches did not have an equitable interest in the settlement by virtue of their ownership interest in the LLC. In recognizing Mr. Johnston's independent expense in funding the contribution claim, the trial court ordered proceeds from the settlement to be distributed to each member of the LLC in shares proportionate to their ownership interest "after reduction of the [Peaches'] aggregate shares by amounts [owed] to the [Johnstons] for the MTCA award and prejudgment interest hereon and the attorney fee award." CP at 885.

Ms. Peach was arguably enriched through Mr. Johnston's continued funding of Attorney Stafford's services; however, as a member of the LLC, any enrichment is not unjust. Granting the Johnstons the entire settlement of $270,437.79, as they requested at trial, would disregard the payments made by Mr. Peach to fund the remediation between August 2013 and July 2019. It would further overlook the payments made by Mr. Peach to Attorney Stafford between September 2013 and July 2019. To rectify the inequity of Mr. Johnston's disproportionate contribution, the trial court, presumably under the equitable doctrine of quantum meruit, entered judgment in favor of the Johnstons for the

14

payments he made for legal services beyond those made by Mr. Peach, as well as accrued interest and attorney fees.

The trial court's conclusions of law are supported by its findings of fact, which, in turn, are supported by substantial evidence. The trial court correctly applied the doctrine of unjust enrichment and, under its broad discretion, did not err in granting judgment in favor of the Johnstons under the doctrine of quantum meruit rather than awarding them the entirety of the MTCA contribution settlement.

### *Johnston-Peach, LLC*

The Johnstons argues the trial court erred in concluding that Mr. Johnston was acting as a member-manager of the LLC under the terms of the Operating Agreement when he contributed to the remediation efforts and funded the MTCA contribution claim. Although the Johnstons provide limited support for this contention, we proceed with review of the claimed error and affirm.

Operating agreements govern "[r]elations among the members as members and between the members and the limited liability company" and "[t]he rights and duties . . . of a person in the capacity of manager." RCW 25.15.018(1)(a)-(b). To the extent an operating agreement does not cover these matters, the provisions of chapter 25.15 RCW apply. RCW 25.15.018(2).

An LLC continues after its dissolution only for purposes of winding up its activities. RCW 25.15.297(1). The manager of a dissolved LLC is responsible for

managing the business and affairs of the LLC in winding up its activities. RCW

25.15.297(3). In winding up its activities, a LLC may:

> (a) . . . preserve the limited liability company's business or property as a going concern for a reasonable time; prosecute and defend actions and proceedings, whether civil, criminal, or administrative, transfer the limited liability company's property; settle disputes; and perform other necessary acts; and
>
> (b) Shall discharge the limited liability company's liabilities, settle and close the limited liability company's activities, and marshal and distribute the assets of the limited liability company.

RCW 25.15.297(2).

The Johnstons contend the trial court's conclusion that Mr. Johnston was acting as

the member-manager of the LLC does not reconcile with the court's finding that the

parties ignored the Operating Agreement, that the LLC is "defunct" and merely a "shell,"

that the LLC had been dissolved, and that the parties were paying expenses from their

personal funds. CP at 874, 871. In light of these findings, the court further found that

since the LLC's dissolution in 2012, "the sole legitimate purpose of the LLC has been

winding up" and the LLC "has been obligated to discharge its liabilities, settle and close

its activities, and marshal and distribute its assets." CP at 871. Under RCW

25.15.297(1), the court's findings support its conclusion that Mr. Johnston, as the

member-manager, bore the sole responsibility of winding up the LLC.

The trial court's conclusion that Mr. Johnston was acting as a member-manager of

the LLC under the terms of the Operating Agreement when he contributed to the

16

remediation efforts and funded the contribution claim, is supported by the court's

findings of fact which, in turn, are supported by substantial evidence.

ATTORNEY FEES

The Johnstons contend the trial court erroneously limited their award of attorney

fees. They also seek attorney fees on appeal. Ms. Peach responds that the trial court

correctly limited the Johnstons' award of attorney fees and also seeks attorney fees on

appeal. We affirm the trial court's limited award of attorney fees and decline to award

attorney fees to either party on appeal.

The court may award attorney fees if authorized by a contract, statute, or in equity.

*Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993). On appeal, we

review de novo a trial court's determination that it is authorized to award attorney fees

under the terms of a contract. *Hawkins v. Diel*, 166 Wn. App. 1, 9-10, 269 P.3d 1049

(2011). Once the legal basis for an award of attorney fees is met, a trial court's decision

to award fees is reviewed for an abuse of discretion. *Gander v. Yeager*, 167 Wn. App.

638, 645, 282 P.3d 1100 (2012). Stated otherwise, if attorney fees are authorized by

contract, then the trial court's award of attorney fees will be upheld unless the court

manifestly abused its discretion. *See Sw. Suburban Sewer Dist. v. Fish*, 17 Wn. App. 2d

833, 838, 488 P.2d 839 (2021). A court abuses its discretion when its decision is

manifestly unreasonable or exercised on untenable grounds. *Breckenridge v. Valley Gen.*

*Hosp.*, 150 Wn.2d 197, 203-04, 75 P.3d 944 (2003). A court's "decision is 'based on

untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

"Whether a party is a prevailing party" for purposes of determining an entitlement to attorney fees is "a mixed question of law and fact that we review under an error of law standard." *Hawkins*, 166 Wn. App. at 10.

The Johnstons contend the trial court erroneously limited their award of attorney fees when it declined to award fees incurred in defending Ms. Peach's unsuccessful counterclaims under the Operating Agreement.

The LLC's Operating Agreement provides, in part:

> 12. In the event that any party hereto brings any legal proceeding to enforce or interpret any provision hereof, the party which substantially prevails in such proceeding shall be entitled to have its legal fees and costs, including costs of appeal, paid by the other party.

Ex. 27. In regard to attorney fees, the trial found, in part:

> 53. Defendants litigated their defenses and counterclaims based on the Operating Agreement. Their premise was that Johnston as surviving manager was obligated to follow the Operating Agreement, that he had failed in that duty, and the defendants were damaged.

> 54. Plaintiff's [sic] responded that given the dissolution of the LLC and the course of conduct of the parties, the Operating Agreement was a nullity and had no force or effect on the legal obligations or entitlements of the parties.

55. Both parties prevailed in part and failed in part on their claims under the Operating Agreement. Defendant's [sic] succeeded in proving the applicability of the Operating Agreement, and Johnston succeeded in proving that his conduct as member-manager fulfilled the duties he owed to the other members of the LLC. Therefore, neither party is considered a "prevailing party," for the purposes of an attorney fee award.

CP at 876.

The Johnstons argue the trial court erred in not awarding them additional fees because it improperly found that both parties prevailed in part and failed in part on their respective claims under the Operating Agreement. The Johnstons direct us to RCW 4.84.330. RCW 4.84.330 provides that attorney fees should be awarded to the prevailing party in any action where a contract provides attorney fees should be awarded where they are incurred to enforce the provisions within it. The "prevailing party" is defined as the "party in whose favor final judgment is rendered." RCW 4.84.330.

Here, Ms. Peach prevailed on her claim that Mr. Johnston was acting in his capacity as a member-manager of the LLC, thereby defeating the Johnstons' claim of unjust enrichment. The Johnstons were successful in defending against Ms. Peach's claims brought under the Operating Agreement. Thus, both parties prevailed in part and failed in part. The court's determination that neither party substantially prevailed is not manifestly unreasonable nor based on untenable grounds. We therefore affirm the trial court's attorney fee award.

The Johnstons next argue they should be awarded attorney fees on appeal. RAP 18.1(a) states:

> If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court.

The Johnstons are not the prevailing party under the terms of the Operating Agreement since they did not prevail on appeal. Therefore, we decline to award the Johnstons attorney fees on appeal.

Ms. Peach argues she should be awarded attorney fees on appeal. She implicitly argues that she is entitled to attorney fees because the Operating Agreement authorizes attorney fees for the prevailing party. As detailed above, neither party substantially prevailed on their claims under the Operating Agreement. Therefore, Ms. Peach's purported entitlement to attorney fees under the Operating Agreement is unwarranted.

Ms. Peach further asserts the Johnstons' arguments on appeal are "entirely unsound and should be considered frivolous;" therefore, she should be awarded attorney fees. Br. of Resp't at 37.

RAP 18.9(a) gives the appellate court the authority to order a party who files a frivolous appeal to pay damages, including an award of attorney fees. *Kinney v. Cook*, 150 Wn. App. 187, 195, 208 P.3d 1 (2009). "'An appeal is frivolous, if considering the entire record, the court is convinced that the appeal presents no debatable issues upon

which reasonable minds can differ and that it is so devoid of merit that there is no possibility of reversal.'" *Id.* (quoting *Lutz Tile, Inc. v. Krech*, 136 Wn. App. 899, 906, 151 P.3d 219 (2007)).

Ms. Peach fails to provide authority or facts to support her contention. Passing treatment of an issue or lack of reasoned argument is insufficient to merit this court's consideration. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012). Notwithstanding this deficiency, the issues put before this court on appeal presented debatable issues that were not "so devoid of merit" as to find "there is no possibility of reversal." *Kinney*, 150 Wn. App. at 195.

The trial court properly limited the attorney fees awarded to the Johnstons, and we decline to award either party attorney fees on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, C.J.                                  Murphy, J.