IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DONALD CANFIELD,          )
                                   )   No. 72869-5-I
          Appellant,    )
                                   )   DIVISION ONE
          v.                )
                                   )
MICHELLE CLARK,          )
                                   )
          Respondent,  )   UNPUBLISHED OPINION
                                   )
"JOHN DOE1" and "JANE DOE1," and   )   FILED: August 22, 2016
their marital community, and       )
"JOHN DOE2" and "JANE DOE2," and   )
their marital community,         )
                                   )
          Defendants.   )

BECKER, J. — The verdict form used in this defamation case did not hinder the plaintiff's presentation of his theory of defamation per se. The trial court did not err in refusing to order a new trial when the jury returned a verdict of zero damages. We affirm.

This is appellant Donald Canfield's second appeal. As the result of his first appeal, he was allowed to bring to trial a defamation claim against Michelle Clark.[1] Canfield supervised Clark when both were employed in the electrical shop of the Seattle Public Schools. Clark reported that Canfield carried a gun

---

[1] Canfield v. Clark, noted at 175 Wn. App. 1003 (2013).

while on school property. Carrying a gun on school property is a crime, and Clark's statements prompted an investigation of Canfield. The investigation led to Canfield being demoted, but not for carrying a gun on school property. That allegation was never substantiated. The demotion was for harassing other shop employees and creating a hostile work environment. Through a grievance arbitration, Canfield was reinstated, won back wages, and had the discipline reduced to an oral reprimand.

Canfield believed that Clark's accusation had damaged his health, financial condition, and reputation. He sued her for defamation. The case went to trial in October 2014. The jury found on a special verdict form that Clark (1) made defamatory statements against Canfield and (2) did so with actual malice, but (3) did not cause damage to Canfield. Canfield appeals.

## DENIAL OF SUMMARY JUDGMENT

We first address Canfield's claim that the trial court erred by denying his motion for summary judgment. The trial court determined that summary judgment was precluded by the following factual issues: (1) whether Clark's statements about Canfield were false and (2) whether Clark's statements injured Canfield.

"A summary judgment denial cannot be appealed following a trial if the denial was based upon a determination that material facts are disputed and must be resolved by the fact finder." Brothers v. Pub. Sch. Emps. of Wash., 88 Wn. App. 398, 409, 945 P.2d 208 (1997). Because the trial court found there were disputed issues of fact, this assignment of error is unreviewable.

2

VERDICT FORM AND DEFAMATION PER SE

Canfield's primary assignment of error concerns the form of the verdict.

He contends that improper wording prevented the jury from considering his

theory of defamation per se and giving him at least a nominal award of damages.

Although Canfield does not assign error to the instructions, a review of the

instructional framework for the defamation claim helps to put the argument about

the verdict form in context.

Instruction 4 defined "defamatory statement."

> A statement is defamatory if it tends so to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.

Instruction 5 summarized Canfield's defamation claim and correctly stated

the elements, including the element of proximate cause. Schmalenberg v.

Tacoma News, Inc., 87 Wn. App. 579, 601-02, 943 P.2d 350 (1997), review

denied, 134 Wn.2d 1013 (1998).

> In this case, the Plaintiff claims that the Defendant made a defamatory statement that Plaintiff had a gun on school district property to Mr. Auki Piffath and Ms. Jeanette Bliss and that the Plaintiff suffered damages as a result.
> For the Plaintiff to recover on his claims for defamation, you must decide by a preponderance of the evidence that each of the following elements are met:
> (1) that the Defendant communicated the statement, either orally or in writing, to a person other than the Plaintiff;
> (2) that the statement was false;
> (3) that the statement was not privileged, and;
> (4) that the statement was a "proximate cause" of damage to Plaintiff. "Proximate cause" is explained in instruction No. 8. Damages are explained in instruction No. 10.

Instruction 6 required Canfield to prove that Clark made the defamatory statements with actual malice.

> The Court has determined that Plaintiff is a "public figure" for purposes of his defamation claim. Consequently, Plaintiff must prove a higher degree of fault by Defendant.
>
> For the Plaintiff to recover on his claims of defamation, you must also decide by a standard of clear and convincing evidence that Defendant made the alleged defamatory statements to Auki Piffath and Jeanette Bliss with actual malice, meaning knowing the statement was false or with reckless disregard for the truth or falsity of the statement.
>
> "Reckless disregard" means (1) a high degree of awareness of probable falsity or (2) the defendant in fact entertained serious doubts about the truth of the statement.

Instruction 7 explained that the alleged statements were subject to a qualified privilege that Clark could lose if Canfield showed that she abused it.

> The Court has determined as a matter of law that the alleged defamatory statements made by Defendant were subject to a qualified privilege. A qualified privilege exists between parties who have a common interest such as communications between employees in a corporation or business.
>
> The privilege may be lost if Plaintiff can show it was abused. The defendant abuses a qualified privilege if any one of the following applies:
>
> 1) She knows the statement to be false or makes the allegedly defamatory statements in reckless disregard for the truth or falsity of the statement; or
>
> 2) She does not act for the purpose of protecting the interest that is the reason for the existence of the privilege; or
>
> 3) She knowingly publishes the matter to a person to whom its publication is not otherwise privileged; or
>
> 4) She does not reasonably believe the matter to be necessary to accomplish the purpose for which the privilege is given.

Instruction 8 was a standard definition of proximate cause.

> The term "proximate cause" means a cause which in a direct sequence produces the injury complained of and without which such injury would not have happened.

4

Instruction 9 instructed the jury on the law of defamation per se.

Generally, a plaintiff may recover only the actual damages caused by defamation. However, a plaintiff is not required to prove actual damages if a communication is "defamatory per se." A defamatory statement is defamatory per se if it exposes a person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or injures him in his business, trade, profession or office.

Instruction 10 stated the measure of damages.

It is the duty of the court to instruct you as to the measure of damages. By instructing you on damages the court does not mean to suggest for which party your verdict should be rendered.

If your verdict is for the plaintiff, Donald Canfield, then you must determine the amount of money that will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by Defendant Clark's defamatory statements.

If you find for the plaintiff, you should consider the following elements:

(1) The physical harm to the plaintiff;

(2) The emotional harm to the plaintiff caused by the defendant's defamatory statements, including emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, loss of reputation and/or anguish experienced and with reasonable probability has been experienced by plaintiff in the past, the present and in the future.

The burden of proving damages rests upon the party claiming them, and it is for you to determine, based upon the evidence, whether any particular element has been proved by a preponderance of the evidence.

Any award of damages must be based upon evidence and not upon speculation, guess, or conjecture. The law has not furnished us with any fixed standards by which to measure emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, and/or anguish. With reference to these matters you must be governed by your own judgment, by evidence in the case, and by these instructions.

The verdict form posed four questions to the jury.

We, the jury answer the questions submitted by the court as follows:

**QUESTION NO. 1: Do you find that the Defendant Clark made defamatory statements about Plaintiff Canfield?**
ANSWER:                Yes        No
*(DIRECTION: if you answered "no" to Question 1, STOP and sign and date this verdict form. If you answered "yes," answer Question No. 2).*

**QUESTION NO. 2: Do you find that Defendant Clark made the defamatory statements with actual malice, knowledge of the statements' falsity or reckless disregard for the truth?**

ANSWER:                Yes        No
*(DIRECTION: if you answered "no" to Question 2, STOP, sign this verdict form. If you answered "yes" to Question 2, answer Question No. 3).*

**QUESTION NO. 3: Do you find that the defamatory statement made by Ms. Clark was a proximate cause of damages to Mr. Canfield?**

ANSWER:                Yes        No
*(DIRECTION: if you answered "no" to Question 3, STOP and sign and date this verdict form. If you answered "yes," answer Question No. 4).*

**QUESTION NO. 4: What do you find to be Mr. Canfield's total amount of damages proximately caused by the defamatory statements made by Defendant Clark?**
ANSWER:  $_____
*(DIRECTION: STOP and sign and date this verdict form.)*

The jury answered yes to the first two questions, finding that Clark made defamatory statements about Canfield with actual malice. The jury answered no to question 3, finding that the defamatory statement did not proximately cause damage to Canfield. Accordingly, the jury did not answer question 4 about the amount of damages.

Canfield contends question 3 was misleading and legally erroneous because the question prevented the jury from presuming damages as permitted by the doctrine of defamation per se. His argument is consistent with the

6

objection he raised to the verdict form during the final instructions colloquy.[2] We will regard the issue as preserved even though Canfield does not argue that it would have been acceptable to substitute any of the versions of the verdict form he proposed to the trial court.[3] See Crossen v. Skagit County, 100 Wn.2d 355, 358-61, 669 P.2d 1244 (1983). The court had several extensive discussions with the parties regarding the instructions, and the court was aware of Canfield's position that question 3 should have stated that damages are presumed if the plaintiff proves defamation per se. The trial court reasoned, however, that the wording of the verdict form "flows naturally given the general instructions we've given."

We review a trial court's decision regarding a special verdict form under the same standard we apply to decisions regarding jury instructions. State v. Fehr, 185 Wn. App. 505, 514, 341 P.3d 363 (2015). Jury instructions are not erroneous if they permit each party to argue their theory of the case, are not misleading, and when read as a whole, properly inform the trier of fact of the

---

[2] Compare Verbatim Report of Proceedings (Nov. 5, 2014) at 1145-46 with Brief of Appellant at 34.

[3] See Clerk's Papers at 920, 995, 1667-68 (plaintiffs' proposed special verdict forms). The special verdict form in Canfield's third set of proposed instructions read as follows:

**QUESTION 1:** Do you find that the defendant defamed plaintiff?
ANSWER:           Yes      No
If you answer no, please sign the verdict form.

**QUESTION 2:** If you find that defendant defamed plaintiff, what do you find to be plaintiff's damages?
ANSWER: $ _____
Clerk's Papers at 1667-68.

applicable law. Caruso v. Local Union No. 690, 107 Wn.2d 524, 529, 730 P.2d 1299, cert. denied, 484 U.S. 815 (1987).

When a statement is defamatory per se, "'damage to the plaintiff is said to be "presumed," and the jury, without any further data, is at liberty to assess substantial damages, upon the assumption that the plaintiff's reputation has been injured and his feelings wounded.'" Arnold v. Nat'l Union of Marine Cooks & Stewards, 44 Wn.2d 183, 187, 265 P.3d 1051 (1954), quoting CHARLES T. MCCORMICK, HANDBOOK ON THE LAW OF DAMAGES 423, § 116 (1935). Consistent with that statement of law, instruction 9 properly informed the jury that a plaintiff who can prove defamation per se does not need to put on proof of "actual damages."

According to Canfield, the defamatory statement that he carried a gun on school grounds was necessarily defamatory per se because that conduct is criminal. Yet the jury failed to assess any damages at all, and in Canfield's opinion that failure must have occurred because of the wording of question 3.

> "Where a defamation is actionable per se, and neither truth nor privilege is established as a defense, the defamed person is entitled to substantial damages . . . ."
> Special Verdict Form, Question No. 3 is misleading in that it could lead the jury to conclude that it was required to find Plaintiff was damaged even if the jury were to find the statements made by Defendant Clark to be defamatory per se.

Appellant's Brief, at 34 (citations omitted). Canfield argues that question 3 required him "to prove damages even if the statements made were defamatory per se." Appellant's Brief, at 35. "Question No. 3 forced the jury to find actual

8

damages and if it did not find damages, the inquiry ended." Appellant's Reply Brief, at 12.

We disagree. The jury was not obliged to find defamation per se. Instruction 9 required Canfield to prove that a defamatory statement *exposed* him to a set of circumstances from which damages may be presumed: "A defamatory statement is defamatory per se if it exposes a person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or injures him in his business, trade, profession or office." The jury may have found that Clark's statement, while defamatory, did not have the effect of exposing him to ridicule, depriving him of public confidence, or injuring him in his job and therefore did not cause him any damage.

If the jury did find that Clark's statement about the gun was defamatory per se, question 3 did not force the jury to find actual damages. The jury knew from instruction 9, the instruction on defamation per se, that Canfield was not required to prove actual damages if the communication was defamatory per se.[4] When read as a whole with the instructions, the special verdict form properly informed the jury of the applicable law.

Nor did the verdict form prevent Canfield from arguing his theory of the case. Canfield was able to, and did, argue his theory of defamation per se under instruction 9. He argued to the jurors that if Clark's statements amounted to

---

[4] Instruction 9, to which Canfield does not assign error, is consistent with the somewhat wordier instruction approved in Miller v. Argus Publ'g Co., 79 Wn.2d 816, 820-21 n.3, 490 P.2d 101 (1971), overruled on other grounds by Taskett v. KING Broad. Co., 86 Wn.2d 439, 546 P.2d 81 (1976).

defamation per se, damages could be presumed so long as they were the proximate result of Clark's statements.

> So in this case, defamation per se is a principle that says that if somebody says something within—that covers a particular context, something that tends to harm somebody in their business, for example—that's what applies in this case most directly—then you can automatically—we don't have to prove actual damages. You can presume damages. And what you do is you presume damages that would naturally flow from that type of statement. So you need to keep this in mind when you're determining the damage portion as well. They still need to be damages that would be proximately caused by the statement, but you can presume that they exist. It's a form of what they call strict liability. It applies because statements such as the defamatory statements made by Ms. Clark are statements such that they cause particular harm to a party.
> So in this case, a defamatory statement is defamatory per se if it exposes a person to hatred, contempt, ridicule or—I can't say that word [obloquy]—to deprive him of the benefit of public confidence or social intercourse or injures him in his business, trade, or profession. I don't believe that there is any doubt that a statement that an employee has a gun on them at a school district would injure them in their business. So I believe both of the statements made clearly fall under defamation per se, and that's the way that you should treat the evidence in this case.

And in rebuttal, Canfield argued again, "if we show defamatory per se, you can presume damages."

In related assignments of error, Canfield contends Clark's defamatory statement that she saw Canfield carrying a gun on school grounds was defamatory per se as a matter of law. He claims no reasonable juror could have found otherwise and therefore contends that the trial court erred by denying his motion for a directed verdict and his motion for judgment as a matter of law. Canfield also alleges that he was prejudiced when counsel for Clark was allowed to argue, over objection, that the plaintiff's case failed for lack of proof that the statements caused harm.

10

These arguments, like Canfield's challenge to the verdict form, assume an award of damages is obligatory once it is proved that the defendant made a defamatory statement—one that, in the words of instruction 4, "tends" to harm reputation. For damages to be presumed under instruction 9, it is not enough merely to prove a statement that "tends" to harm reputation. Clark's defense theory was that her statement, even if defamatory, was not a "but for" factual cause of damage to Canfield. Clark submitted evidence that Canfield had a poor reputation in the electrical shop before her statements, that his reputation remained equally poor thereafter, and that to the extent he was injured in his career by the investigation, he caused it himself by creating a hostile work environment. Clark's closing argument focused on the theme that "there has been no evidence from any witness that the alleged statement made by my client caused any harm to Mr. Canfield, to his reputation, or deterred any third persons from dealing with him." Clark's argument continued, "You know, there was not any harm to Mr. Canfield's reputation. He has not produced, as I mentioned, a witness that has come in and said: Because of the alleged statement, I treated Don differently. There hasn't been a single witness that has said: Because of the alleged statement, I avoided him."

Under instruction 9, the jury could have found that Clark's statements were defamatory per se, but the jury was not obligated to make that finding. Reasonable jurors could have adopted Clark's view of the evidence. Clark's closing argument was consistent with the instructions and not improper.

In summary, question three on the verdict form did not misstate the law, it was not misleading, and it did not prevent the jury from considering Canfield's theory of defamation per se. The trial court did not err in refusing to find defamation per se as a matter of law and did not err in overruling Canfield's objection to closing argument.

ADMISSION OF DEFENSE EXHIBITS

Canfield contends certain defense exhibits should have been excluded because they contained inadmissible hearsay.

The exhibits in question are handwritten notes taken by the school district employee whose investigation led to Canfield's demotion. The notes include unflattering comments made about Canfield by his coworkers, including assertions that he discriminated against employees who were not white males. The trial court admitted the notes as a business record over Canfield's hearsay objection. The investigator summarized that she had found a pattern of "harassment, bullying, [and] intimidating" behavior that she thought warranted termination. Canfield contends the notes were "highly prejudicial" and should have been excluded under ER 403.

Assuming the notes should have been excluded as hearsay, we nevertheless do not find reversible error. The unflattering statements about Canfield contained in the notes came into evidence in various other ways. Canfield's own testimony and testimony he elicited from other witnesses brought up the fact that he had been accused of creating a hostile work environment. Most significantly, Canfield himself moved to admit exhibit 63, the arbitrator's

12

opinion and award. The award was favorable to Canfield in that it supported the view that the entire investigation was a trumped up affair caused by Clark's unsubstantiated allegation that Canfield carried a gun on school property. But the award also quoted in full a district letter describing Canfield's alleged misconduct. The letter quoted virtually everything that was said in the investigator's notes. Under these circumstances, we conclude any error in admitting the notes was harmless.

## EXCLUSION OF LETTER

Canfield assigns error to the trial court's refusal to admit plaintiff's exhibit 75, a letter authored by Jessie Logan. Logan was one of three people (the other two were the district's investigator and one of Clark's coworkers) who heard Clark say she saw Canfield carrying a gun at school. Canfield thought Logan would testify at trial, but Logan apparently was not subpoenaed and was not present. Canfield tried to get the substance of her testimony before the jury by way of the letter. Logan's letter states that Clark told her Canfield always carried a gun even in the electrical shop. The letter says: "From the way she was talking about him, I really believed he was a potential mass killer."

Logan allegedly sent the letter to Canfield's union representative, Nancy Mason. Mason testified that she found the letter in her file. Canfield moved to have it admitted as a business record of the union. The court denied the motion. Mason was allowed to testify that Logan came to see her about Clark and that Mason interviewed Logan in connection with the allegations raised against Canfield. But when Canfield asked Mason what Logan said, the court sustained

13

Clark's hearsay objection and rejected Canfield's argument that the question went to "Mason's state of mind and her evaluation of the case."

On appeal, Canfield argues that the letter was admissible under ER 803(a)(3) as a statement of Jessie Logan's state of mind. Under that rule, a statement of "the declarant's then existing state of mind" is not excluded by the prohibition against hearsay. This is not the issue Canfield raised at trial, where the only discussion of the state of mind exception pertained to Mason's state of mind, not Logan's. And in any event, the trial court properly rejected Canfield's attempt to have Mason testify about what Logan said in the letter. Canfield cites no authority that would permit Logan's letter to be admitted as evidence of her state of mind. The court correctly described the letter and Mason's testimony about its contents as classic hearsay.

## EXCLUSION OF EVIDENCE OF BIAS

The trial court granted Clark's motion in limine to exclude evidence that the school district was paying for Clark's attorney fees. The judge said, "I mean, the school district is not a defendant in the case." Canfield contends the court's ruling improperly prevented him from presenting evidence that witnesses employed by the school district were biased in favor of Clark.

Canfield raised this issue in his motion for a new trial. The trial court's ruling on that motion explains: "The Court rejected such evidence because it was not relevant to the specific subject matter of this case, and was potentially confusing the issues the jury was to resolve."

A trial court's exclusion of evidence based on its potential to confuse the jury is entitled to great deference.  <u>Degroot v. Berkley Const., Inc.</u>, 83 Wn. App. 125, 128, 920 P.2d 619 (1996).  Canfield does not persuasively explain how the district's payment of Clark's attorney fees would demonstrate that school employee witnesses were motivated to give testimony unfavorable to Canfield. We conclude the court acted within its discretion.

Affirmed.

Becker, J.

WE CONCUR:

Spearman, J.

Appelwick, J.