IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| REBEKAH L. HART, individually, | No. 81041-3-I |
| Appellant, | |
| v. | DIVISION ONE |
| EMILY PRATHER and "JOHN DOE" PRATHER, individually and the marital community comprised thereof; PARKER J. KNAUER, individually; STEVEN KNAUER and PAMILA KNAUER, individually and the marital community comprised thereof; BRAYDEN STANTON and "JANE DOE" STANTON, individually and the marital community comprised thereof; TODD EVANS and "JANE DOE" EVANS, individually and the marital community comprised thereof; and ERIC NELSON and "JANE DOE" NELSON, individually and the marital community comprised thereof; DAVID W. BARKER and "JANE DOE" BARKER, individually and the marital community comprised thereof, | UNPUBLISHED OPINION |
| Respondents, | |
| BRITTANY POWELL, individually, | |
| Defendant. | |

CHUN, J. — Rebekah Hart suffered injuries from four car accidents occurring over five years. She sued various persons involved. The matter proceeded to a seven-week jury trial. The trial court dismissed one defendant

Citations and pin cites are based on the Westlaw online version of the cited material.

before sending the case to the jury, which returned a verdict for Hart. Because the jury attributed 20 percent of Hart's damages to the collision involving the dismissed defendant, the court reduced her damage award by that percentage. The court then entered judgment against the defendants severally. Hart appeals and pursues multiple claims. We affirm.

## I.    BACKGROUND

### A. The First Accident

The first accident occurred on March 1, 2009. Emily Prather was driving the Knauer family's car, with Parker Knauer as a passenger, over a highway overpass in Gig Harbor.[1] While turning left, Prather collided with Hart's vehicle. Hart did not claim any injuries at the scene.

Two days later, a doctor examined Hart for injuries related to the accident. Hart complained of pain in her right knee and upper right arm. She also stated that she experienced chest pain, neck pain, increased sleepiness, and headaches, as well as pain in her left shoulder and jaw.

Several months later, Hart returned for a follow-up examination. She complained of continuing headaches that appeared to occur when the doctor applied pressure to her upper neck. The doctor recommended that she see a chiropractor who specialized in the upper cervical area. Hart began seeing such

---

[1] The complaint alleges, "All of Defendant Emily C. Prather's negligent acts or admissions herein were done for and on behalf of Defendants, Parker Knauer, Steven Knauer and/or Pamila Knauer, who are therefore responsible for the conduct of Defendant, Emily C. Prather, under the Doctrines of Negligent Entrustment, The Family Car Doctrine, Agency principles, or other such applicable law to be determined upon further discovery herein." Prather drove the car with Parker Knauer's permission.

a specialist in September 2009.

B.  The Second Accident and this Lawsuit

Nearly ten months after the first accident, a single-car collision involving Hart occurred on December 22, 2009.  Hart attended high school then with Alan Sluka and Brayden Stanton.  That night, Hart, Stanton, and other high school friends went to Sluka's home where a confrontation erupted over a prank.  Hart, Stanton, and their friends then went to a nearby restaurant.  Sluka pursued them.  When Sluka showed up, Stanton left and drove off in a truck[2] with Hart in the backseat to avoid any further conflict.  Sluka followed.

Eric Nelson, Sluka's stepfather, left his house in his truck to retrieve Sluka.  Nelson spotted Sluka chasing Stanton.  After Nelson saw Stanton and Sluka drive through a red light, he sped to catch up to them.  Nelson estimated that Stanton and Sluka were driving around 55-60 miles per hour (mph) in a 30-35 mph zone.  Nelson decided to intervene by speeding up to 80 mph and passing Sluka so that he could get between Sluka's and Stanton's vehicles.  Stanton and Nelson drove through a red light.  Nelson then saw that Sluka had stopped at the light, and Nelson turned off the road so that he was no longer following Stanton.

Stanton slowed down to make a turn.  He still believed he was being followed.  While Stanton made the turn, he lost control of the truck while going

---

[2] The owner of the truck had left it in the care of defendant Todd Evans.  The complaint alleges, "All of Defendant Brayden Stanton's negligent acts or admissions herein were done for and on behalf of Defendants, Todd Evans, 'Jane Doe' Evans . . . who are therefore responsible for the conduct of Defendant, Brayden Stanton, under the Doctrines of Negligent Entrustment, The Family Car Doctrine, Agency principles, or other such applicable law to be determined upon further discovery herein."

3

about 45 mph.  The truck veered across the opposite lane of travel and then off the roadway.  The vehicle damaged a number of trees before landing on its side. Stanton lost consciousness and suffered a concussion.

This second accident exacerbated Hart's injuries and "produced increased headaches."

In November 2012, almost two years later, Hart filed this lawsuit.

C.  The Third Accident

The third accident occurred on April 7, 2013, roughly five months after Hart filed the complaint.  Coincidentally, the incident took place at the same intersection where the first accident involving Prather occurred.  The other driver involved in the collision was David Barker.  The accident did not cause any new injuries to Hart but exacerbated her previous injuries.

D.  The Fourth Accident

The fourth and final accident occurred about a year later on March 22, 2014.  Hart was in the passenger seat of the vehicle of her friend, Brittany Powell.  Powell believes that while she was driving on an I-5 south onramp in Seattle, one or more of the tires on her vehicle "blew."  Powell began to lose control of the car and it slid across the other lanes and onto the opposite side of the highway; the car faced oncoming traffic.  Another vehicle then "side swiped" the front of the car with "a little bit more" damage on the passenger side.  Hart testified that the collision did not cause her to suffer any new injuries, but caused her previous injuries to "flare[] up" for two or three days.

4

E. Further Litigation, Trial & Verdict

Hart amended her complaint to add Barker and Powell as defendants. The court granted Powell's motion to dismiss prior to sending the case to the jury.

The court determined that Hart was fault-free with regard to the second, third, and fourth accidents, and instructed the jury as such.

After seven weeks of trial, the jury awarded Hart:

- $17,000 in past economic and non-economic damages for the period of March 1, 2009 to December 22, 2009;

- $59,000 in past economic and non-economic damages for the period of December 22, 2009 to April 7, 2013;

- $32,000 in past economic and non-economic damages for the period of April 7, 2013 to March 22, 2014; and

- $325,000 in past economic and non-economic *and* future economic and non-economic damages for the period of March 22, 2014 to the present.

The jury found that defendants Prather, Nelson, Stanton, and Barker acted negligently.  But it determined that Nelson's negligence was not a proximate cause of Hart's injuries.  The jury also determined that Hart's injuries were divisible.  It apportioned responsibility for Hart's injuries as follows:

| | |
|---|---|
| To the collision of March 1, 2009: | 4 % |
| To Defendant Stanton: | 70 % |
| To Defendant Nelson: | 0 % |
| To Defendant Barker: | 6 % |
| To the collision of March 22, 2014: | 20 %. |

The court reduced the judgment by 20 percent to account for the damages attributed to the March 22, 2014 accident, as to which it had dismissed the involved defendant, Powell. The court then entered judgments holding the defendants severally liable only. Hart appeals.

## II.     ANALYSIS

### A. Joint and Several Liability

Hart argues that the trial court erred by not rendering the defendants jointly and severally liable for her damages under RCW 4.22.070(1)(b). While defendants Stanton and Evans[3] agree with Hart, defendants Barker, Prather, and Knauer assert that joint and several liability under the statute does not apply because Hart's injuries were divisible. We determine the court did not err.

We review de novo issues of statutory interpretation. Afoa v. Port of Seattle, 191 Wn.2d 110, 119, 421 P.3d 903 (2018). We "look first to the plain meaning of the statutory language, and . . . interpret a statute to give effect to all language, so as to render no portion meaningless or superfluous." Benson v. State, 4 Wn. App. 2d 21, 26, 419 P.3d 484 (2018). Our fundamental objective when construing a statute is to determine and carry out the legislature's intent. King County v. King County Water Dist. No. 20, 194 Wn.2d 830, 853, 453 P.3d 681 (2019).

Statutes that can be reasonably interpreted in two or more ways are ambiguous. Payseno v. Kitsap County, 186 Wn. App. 465, 469, 346 P.3d 784

---

[3] As mentioned above, the jury apportioned 70 percent of responsibility for Hart's damages to Stanton, who drove Evans's truck in the second accident.

(2015). When statutes are ambiguous, it is appropriate for courts "to resort to aids to construction, including legislative history." King County, 194 Wn.2d at 853. Ultimately, we must harmonize related statutory provisions to carry out a consistent scheme that maintains the statute's integrity. King County, 194 Wn.2d at 853.

Through the 1986 tort reform act, the legislature abrogated the common law rule of joint and several liability, leaving several liability as the default. Afoa, 191 Wn.2d at 119. Still, a statutory exception applies when the plaintiff was not at fault:[4]

> (1) . . . The liability of each defendant shall be several only and not be joint except:
>
> . . .
>
> (b) If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants [claimant's] total damages.

RCW 4.22.070(1)(b) (alteration in original).

In Kottler v. State, 136 Wn.2d 437, 963 P.2d 834 (1998), our Supreme Court analyzed when joint and several liability applies under RCW 4.22.070. Kottler identifies three scenarios where joint liability applies: (1) where negligent parties acted in concert or a master/servant or principal/agent relationship existed, (2) cases involving hazardous waste, tortious interference with business, and unmarked fungible goods, and (3) where plaintiff is fault-free and the court entered judgment against two or more defendants. Id. at 446-47. The court

---

[4] The parties do not dispute that, at the trial court, Hart was determined to be fault free with respect to the accidents.

stated that when a plaintiff is fault-free, only a modified form of joint and several liability applies. Id. at 447. Under this modified approach, defendants "will be jointly and severally liable only for the sum of their proportionate liability." Id. at 446; see also RCW 4.22.070(1)(b) ("defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants [claimant's] total damages") (alteration in original).

RCW 4.22.070(1)(b), as interpreted by Kottler, provides that joint and several liability applies when the plaintiff was not at fault and the defendants are jointly liable for "the sum of their proportionate liability." 136 Wn.2d at 446. This must mean that joint liability applies only to injuries caused by an accident where more than one defendant is liable. Thus, for example, defendants Parker and Knauer—who were involved in only the first accident—cannot be held jointly liable under the statute for injuries caused by the second and third accidents.[5] This is the only reasonable interpretation of the statute as to this issue, so it is not ambiguous.[6]

Here, where there were multiple unrelated accidents and the jury determined Hart's damages were divisible as between the accidents, the

---

[5] To this point, we note that we avoid readings of statutes that produce absurd results. Benson, 4 Wn. App. 2d at 26.

[6] Even if RCW 4.22.070 were ambiguous, legislative history would compel us to reach the same result. Through the 1986 tort reform act (Act), the legislature sought to limit the applicability of joint liability. See Duke v. Boyd, 133 Wn.2d 80, 93, 942 P.2d 351 (1997) (stating that the purpose of the Act "was to limit causes of action for injured plaintiffs"). Before the Act, the Washington Supreme Court had declined to impose joint liability when a plaintiff's injuries resulted from multiple, unrelated accidents. See Smith v. Rodene, 69 Wn.2d 482, 484, 418 P.2d 741 (1966) (determining no joint liability where two independent torts, separated by distance and time, caused separate harms). Thus, to expand joint liability to hold defendants liable for divisible injuries would contradict the legislature's purpose in passing the Act.

legislature's policy choice to make several liability the default rule applies. See Cox v. Spangler, 141 Wn.2d 431, 446, 5 P.3d 1265 (2000) (noting that joint liability applies when there is either concert of action or independent torts uniting to cause a single injury). The trial court did not err.[7]

### B. Verdict Form

Hart claims the trial court erred by adding the March 22, 2014 accident to the verdict form because it permitted the jury to allocate fault to Powell, a dismissed, non-negligent defendant. Defendants Prather and Knauer[8] respond that the verdict form allowed Hart to argue her theory of the case and did not misstate the law. Defendant Barker contends that the verdict form did not permit the jury to assign fault to Powell. We determine the court properly added the March 22, 2014 collision to the special verdict form for the jury to apportion responsibility for damages.

The trial court initially omitted the March 22, 2014 accident when asking the jurors to allocate a percentage of responsibility for Hart's injuries. But after a question from the jury about the number of collisions and Powell, the court decided "to do what [it] wanted to do to begin with, and that is put the collision of March 22nd, 2014, back in to the allocation of divisible responsibility." When Hart again stated that she did not believe the court could include a party that was found to have not been negligent, the court responded that it was not allocating

---

[7] On appeal, Hart does not raise any issue concerning whether a defendant should be jointly liable for an injury in connection with only the accident in which they were involved (versus accidents in which they were uninvolved).

[8] Defendants Nelson, Stanton, and Evans did not address this issue in their briefing.

fault to Powell but "asking [the jury] to divide the damages in accordance with the four accidents, regardless of who is at fault."[9]

The special verdict form's Question 5 stated that Powell was not negligent on March 22, 2014. And Jury Instruction 25 told the jury to consider the March 22, 2014 accident for assessing only Hart's injuries or damages:

> Brittany Powell has been dismissed from this lawsuit. It has been determined by the Court that, as a matter of law, there was insufficient evidence to support a claim that Brittney [sic] Powell was negligent and that such negligence was a proximate cause of the accident of March 22, 2014.

> You are to consider the accident of March 22, 2014 solely for the purposes of deciding, what if any, effect that accident had on plaintiff's claimed injuries or damages.

The jury ultimately allocated 20 percent of Hart's damages to the March 22, 2014 collision.

We "review a trial court's decision regarding a special verdict form under

---

[9] Defendant Barker asserts that the invited error doctrine bars Hart's challenge to the special verdict form. The invited error doctrine "'prohibit[s] a party from setting up an error at trial and then complaining of it on appeal.'" Angelo Prop. Co., LP v. Hafiz, 167 Wn. App. 789, 823, 274 P.3d 1075, 1092 (2012) (alteration in original) (quoting City of Seattle v. Patu, 147 Wn.2d 717, 720, 58 P.3d 273 (2002)). But at the trial court, Hart objected to the verdict form and explained her reasoning:

> I also except on the verdict form by inclusion of Ms. Powell as a percentage. And I know you put in, "The collision on March 22nd, 2014," but the jury knows that that's Ms. Powell who has been dismissed from the lawsuit.

> And as a general proposition, I don't believe you can under the statute RCW 4.22.070 allocate to a party who has not been found at the threshold level of fault which is negligence. And she in the end was found nonnegligent in this case, or at least that there is an absence of proof in that regard.

The invited error doctrine does not apply.

Similarly, defendants Prather and Knauer argue Hart waived her prior objection to including the March 22, 2014 accident in the allocation of damages because she stated that "the Court has now helped in providing needed clarity." But given that Hart had just made a detailed objection to the inclusion of the accident, we determine this statement did not constitute a waiver.

the same standard we apply to decisions regarding jury instructions." Canfield v. Clark, 196 Wn. App. 191, 199, 385 P.3d 156 (2016). "Jury instructions are not erroneous if they permit each party to argue their theory of the case, are not misleading, and when read as a whole, properly inform the trier of fact of the applicable law." Id. We review de novo errors of law in jury instructions. State v. Wang, 5 Wn. App. 2d 12, 23, 424 P.3d 1251 (2018).

RCW 4.22.015 requires negligent or reckless conduct that breached a recognized duty for one to be "at fault." Smelser v. Paul, 188 Wn.2d 648, 657, 398 P.3d 1086 (2017) (citing RCW 4.22.015). Thus, "[w]here no tort exists, no legal duty can be breached and no fault attributed or apportioned under RCW 4.22.070(1)." Id. at 656; see also Wash. Dep't of Transp. v. Mullen Trucking 2005, LTD, 194 Wn.2d 526, 535, 451 P.3d 312 (2019) ("the legal proposition of *Smelser* [is] that there must be an actionable duty in tort before fault allocation is allowed").

Hart asserts that the court erred by permitting the jury to allocate fault to Powell. But this mischaracterizes the special verdict form. Question 12 on the verdict form provides, "Assume 100% represents the total of the combined fault *or collisions* that proximately caused plaintiff's injuries and/or damages. What percentage of the 100% is attributable to the negligence or collisions of each of the following[.]" (Emphasis added.) The special verdict form then lists the March 1, 2009 collision, defendant Stanton, defendant Nelson, defendant Barker, and the collision of March 22, 2014. Because the question allowed the jury to assign a percentage of responsibility for Hart's injuries to defendants *or*

11

collisions, it was apparent from the question that the jury was not assigning fault to Powell. It also was clear to the jury that they were not assigning fault to Powell given that Question 5 stated that Powell was not negligent on March 22, 2014. Finally, Instruction 25 told the jury that Powell was not negligent but that they could consider the accident for the effect it had on Hart's injuries.

As the trial court stated, the question asked the jury "to divide the damages in accordance with the four accidents, regardless of who is at fault." Because the jury considered the March 22, 2014 accident for only its effect on Hart's injuries, we conclude its inclusion on the special verdict for did not violate RCW 4.22.070.

C. Sufficiency of the Evidence

Hart asserts that sufficient evidence did not support the jury's finding that the March 22, 2014 accident contributed to 20 percent of her injuries. Defendants Barker, Stanton, and Knauer claim that viewing the evidence in the light most favorable to them, sufficient evidence supported the jury's verdict. We agree with these defendants.

We "cannot overturn the jury's verdict unless it is clearly unsupported by substantial evidence." Gorman v. Pierce County, 176 Wn. App. 63, 87, 307 P.3d 795 (2013). Substantial evidence is what "would persuade a fair-minded person of the truth or correctness of the matter." Erection Co. v. Dep't of Labor & Indus., 160 Wn. App. 194, 202, 248 P.3d 1085 (2011). "When reviewing a jury verdict for substantial evidence, [courts] must consider all evidence and draw all reasonable inferences in the light most favorable to the verdict." Gorman, 176

Wn. App. at 87. The court may not substitute its judgment for the jury's. Id. There is a strong presumption that the verdict is correct. Bunch v. King County Dep't of Youth Servs., 155 Wn.2d 165, 179, 116 P.3d 381 (2005).

Dr. Natalia Murinova began treating Hart after the second collision. After the third accident, Dr. Murinova diagnosed Hart as having post traumatic cervicogenic headaches and migraines. On cross-examination by Powell, Dr. Murinova testified that the fourth accident caused Hart to suffer worsening headaches because her headaches increased from occurring two to three times a day to occurring all day long. The testimony showed that in the fourth accident Hart was in a collision on the freeway where the vehicle spun out of control. Another car then hit the vehicle she was in, on her side of the vehicle.

Viewing this testimony about the accident and Hart's condition in the light most favorable to the verdict, and given the strong presumption that the verdict is correct, we determine that Hart fails to show that substantial evidence clearly did not support the verdict. Thus, we reject this claim.

D. Juror Misconduct

Hart contends the trial court erred by denying her motion for a new trial based on juror misconduct. Defendants Barker, Nelson, Hart, and Prather[10] disagree. We decide the trial court did not abuse its discretion by denying Hart's motion.

We review the denial of a motion for a new trial for abuse of discretion. State v. Balisok, 123 Wn.2d 114, 117, 866 P.2d 631 (1994). A court abuses its

---

[10] Defendants Stanton and Evans do not address this issue in their briefing.

discretion if its decision is manifestly unreasonable or exercised on untenable grounds. Breckenridge v. Valley Gen. Hosp., 150 Wn.2d 197, 203-04, 75 P.3d 944 (2003).

Because the secrecy of jury deliberations is central to our jury system, courts may not receive information to impeach a verdict based on the details of the jury's deliberations. Long v. Brusco Tug & Barge, Inc., 185 Wn.2d 127, 131, 368 P.3d 478 (2016). When determining whether juror misconduct warrants a mistrial, "the first question is whether the facts alleged 'inhere[] in the verdict'; this is a question of law [courts] review de novo." Id. (alteration in original) (quoting Ayers v. Johnson & Johnson Baby Prods. Co., 117 Wn.2d 747, 768, 818 P.2d 1337 (1991)). Facts linked to a juror's mental processes, such as their motive, intent, or belief, or describing the effect on the jury inhere in the verdict. Long, 185 Wn.2d at 131-32.

But a jury's consideration of extrinsic evidence constitutes misconduct and may justify a new trial. Balisok, 123 Wn.2d at 118. Extrinsic evidence is information that is outside the evidence admitted at trial. Id. If the trial court determines that juror declarations allege facts constituting misconduct, then it next exercises its discretion to decide what effect the misconduct could have had on the jury. Long, 185 Wn.2d at 132. "If the trial court has any doubt about whether the misconduct affected the verdict, it is obliged to grant a new trial." Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 137, 750 P.2d 1257 (1988).

Hart provided two juror declarations alleging the following misconduct by one or more jurors: (1) looking at her Facebook page, (2) providing information

14

related to the location of the December 22, 2009 accident, (3) referring to her as an "ambulance chaser" and being biased against women, and (4) preferring Prather because they thought she was "pretty." We address each in turn.

1. Facebook page

In her declaration, the presiding juror stated that four to five jurors violated the court's orders and had "got on the Internet and were reviewing Rebecca [sic] Hart's Facebook page." In his declaration, another juror stated that he "recall[ed] during deliberations that some of the jurors had looked up Rebekah Hart's Facebook page on the internet." These declarations fail to provide any detail as to what the jurors may have discovered on Hart's Facebook page. Thus, even assuming this constituted misconduct, without more detail about what jurors said about the Facebook page, the court could not determine how the misconduct affected the jury. See State v. Arndt, 5 Wn. App. 2d 341, 350, 426 P.3d 804 (2018) (ruling that a juror looking at websites did not warrant a mistrial where the content viewed by the juror was unclear). We conclude the court did not abuse its discretion by denying a new trial based on this alleged ground of juror misconduct.

2. Information about the location of the December 22, 2009 accident

Hart next asserts that a juror who lived along the route of the December 22, 2009 accident provided "information concerning his residence that was on or near the pursuit route, and his opinion in that regard concerning time and distances that would have elapsed based upon his knowledge of residing in that area." But "[d]uring jury deliberations, jurors may 'rely on their personal life

15

experience to evaluate the evidence presented at trial.'" Long, 185 Wn.2d at 135 (quoting Breckenridge, 150 Wn.2d at 199 n.3). During jury selection, several of the prospective jurors disclosed that they lived on Gig Harbor. See Long, 185 Wn.2d at 135 (noting that a juror disclosed relevant life experiences during voir dire when rejecting a juror misconduct claim). The juror's "opinion . . . concerning time and distances that would have elapsed based upon his knowledge of residing in the area" amounts to a reliance on his personal life experience. Moreover, because nothing in the declarations suggests the juror had any special knowledge, his statements had little prejudicial effect. See Chiappetta v. Bahr, 111 Wn. App. 536, 542-43, 46 P.3d 797 (2002) (concluding that where a juror did not have special knowledge, their statement constituted speculation that carried little prejudicial effect). We determine the trial court did not abuse its discretion by denying a new trial based on this alleged conduct.

3. Improper bias

Hart asserts that some jurors were biased against her, because they referred to her as an "ambulance chaser," and against women in general.

"'The right to trial by jury includes the right to an unbiased and unprejudiced jury, and a trial by a jury, one or more of whose members is biased or prejudiced, is not a constitution[al] trial.'" Turner v. Stime, 153 Wn. App. 581, 587, 222 P.3d 1243 (2009) (alteration in original) (quoting Alexson v. Pierce County, 186 Wash. 188, 193, 57 P.2d 318 (1936)). RCW 4.44.170(2) defines actual bias as "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the

16

challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."

### a. "Ambulance chaser"

Hart contends that remarks that she was an "ambulance chaser" show that some jurors were biased against her.

Though the "ambulance chaser" comments show some ill feelings towards Hart, the trial court was within its discretion to determine that they did not show that the jurors could not try the case impartially. Furthermore, calling a plaintiff an "ambulance chaser" does not show such extreme bias such that the right to a jury trial was clearly abridged. See State v. Berhe, 193 Wn.2d 647, 658, 444 P.3d 1172 (2019) (quoting Warger v. Shauers, 574 U.S. 40, 135 S. Ct. 521, 529 n.3, 190 L. Ed. 2d 422 (2014) ("However, the no-impeachment rule must yield in 'cases of juror bias so extreme that, almost by definition, the jury trial right has been abridged.'")).

### b. Alleged bias against women

The presiding juror's declaration also states that "[i]t was very clear that a number of the male jurors did not like my opinion simply because I was a woman." But this statement does not amount to more than Coalman's impression of some of the other jurors. Statements about the declarant's perception of another juror's remarks "unquestionably inhere in the verdict." Long, 185 Wn.2d at 134 n.4. Additionally, Hart does not explain how this alleged bias potentially impacted the verdict. Thus, we do not consider this argument further. See id. at 133 (refusing to consider statements once the court

17

determined they inhered on the verdict).

    4.  Statements that Prather was "Pretty"

Hart's final argument on juror misconduct is that several jurors found Prather "pretty." To state that a party is pretty, without more, does not constitute misconduct. To the extent the presiding juror's declaration details the effect that Prather being attractive had on the jurors' decisions, it inheres the verdict and we do not consider it. Another juror's declaration provides merely that some jurors "favored" Prather. We determine the trial court did not abuse its discretion by denying a new trial on this alleged conduct.

E.  Jury Instructions 23 and 24

Hart claims the trial court erred by giving two instructions on intervening and superseding causes because they were unacceptably redundant and not supported by substantial evidence. We disagree.

Instruction 23 explained the concept of superseding cause in the context of the entire case:

> A superseding cause is a new independent cause that breaks the chain of proximate causation between a defendant's negligence and an injury.
>
> If you find that a defendant was negligent but that the sole proximate cause of the injury was a later independent intervening cause, including but not limited to the accidents of December 22, 2009, April 7, 2013, or March 22, 2014, that a defendant, in the exercise of ordinary care, could not reasonably have anticipated, then any negligence of a defendant is superseded and such negligence was not a proximate cause of the injury. If, however, you find that a defendant was negligent and that in the exercise of ordinary care, a defendant should reasonably have anticipated the later independent intervening cause, then that act does not supersede a defendant's original negligence, and you may find that a defendant's negligence was a proximate cause of the injury.

It is not necessary that the sequence of events or the particular resultant injury be foreseeable. It is only necessary that the resultant injury fall [sic] within the general field of danger which a defendant should reasonably have anticipated.

Instruction 24 addressed superseding cause with relation to the second accident:

A superseding cause is a new independent cause that breaks the chain of proximate causation between a defendant's negligence and an injury.

If you find that defendant Eric Nelson was negligent but that the sole proximate cause of the injury was a later independent intervening cause that defendant Eric Nelson, in the exercise of ordinary care, could not reasonably have anticipated, then any negligence of defendant Eric Nelson is superseded and such negligence was not a proximate cause of the injury. If, however, you find that defendant Eric Nelson was negligent and that in the exercise of ordinary care, defendant Eric Nelson should reasonably have anticipated the later independent intervening cause, Brayden Stanton's driving, then that act does not supersede defendant Eric Nelson's original negligence, and you may find that defendant Eric Nelson's negligence was a proximate cause of the injury.

It is not necessary that the sequence of events or the particular resultant injury be foreseeable. It is only necessary that the resultant injury fall [sic] within the general field of danger which defendant Eric Nelson should reasonably have anticipated.

In reviewing jury instructions, we consider whether the trial court abused its discretion by giving, or refusing to give, certain instructions. Cramer v. Dep't of Highways, 73 Wn. App. 516, 520, 870 P.2d 999 (1994). A court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds. Breckenridge, 150 Wn.2d at 204. "Instructions are not erroneous if they '(1) permit each party to argue [the] theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law.'" Cramer, 73 Wn. App. at 520 (alteration in original) (quoting Walker v. State, 67 Wn. App. 611, 615, 837 P.2d 1023 (1992).

19

1.  Redundancy

A court errs in giving instructions that "as a whole so repetitiously cover a point of law or application of a rule as to grossly overweigh their total effect on one side and thereby generate an extreme emphasis in favor of one party to the explicit detriment of the other party." Samuelson v. Freeman, 75 Wn.2d 894, 897, 454 P.2d 406 (1969) (determining giving six instructions on the standard of care was error). Minor redundancies or casual repetitions in instructions do not constitute error. Id.

Instructions 23 and 24 did not generate an extreme emphasis that grossly favored any defendant over Hart. Though the instructions both concerned superseding cause and used similar language, they concerned different contexts. Instruction 23 concerned superseding causes in terms of Hart's overall damages, while Instruction 24 concerned the issue in relation to Nelson's negligence. The instructions explained what would amount to a superseding cause and what would not. Given this balance, the instructions did not so explicitly favor one side as to constitute an abuse of discretion.

2.  Sufficient Evidence for Instruction 24

Nelson asserts that Hart waived any appellate challenge to Instruction 24 because she did not object on the ground that it was not supported by substantial evidence until after the verdict. Hart does not address this argument in her Reply Brief.

"A party who objects to a jury instruction must 'state distinctly the matter to which counsel objects and the grounds of counsel's objection, specifying the

number, paragraph or particular part of the instruction to be given or refused.'" Millies v. LandAmerica Transnation, 185 Wn.2d 302, 310, 372 P.3d 111 (2016) (quoting CR 51(f)). If a party fails to do so, they deprive the court of the opportunity to remedy the instructional error. Id. A party's failure to adequately object to an instruction may preclude appellate review. Id.

Here, while Hart objected to Instructions 23 and 24 because they were impermissibly redundant, she did not object to Instruction 24 because it was not supported by substantial evidence until after the verdict. Indeed, when arguing that the instructions were redundant, Hart stated that "[i]t's [her] position that only the superseding cause really relates to the December 22nd accident." Hart's failure to object to the instruction on substantial evidence grounds deprived the court of the opportunity to remedy any instructional error. Because Hart not only did not object to Instruction 24 because it was not supported by substantial evidence, but explicitly stated that she believed the issue of superseding cause applied to the second accident and Nelson, she did not adequately object to the instruction on substantial evidence grounds below. Hart makes no argument to suggest she properly preserved the issue for appeal. We decline to review this issue. See RAP 2.5(a) (noting that appellate courts may refuse to review an error not raised in the trial court).

F. Post-Trial Motion for Judgment as a Matter of Law regarding Nelson

Hart claims the trial court abused its discretion by denying her post-trial motion for judgment as a matter of law as to Nelson's liability. Nelson asserts that substantial evidence supported the verdict. We agree with Nelson.

"We review a trial court's decision on a motion for a judgment as a matter of law using the same standard as the trial court." Mega v. Whitworth College, 138 Wn. App. 661, 668, 158 P.3d 1211 (2007). Courts will grant a motion for a judgment as a matter of law when, viewing the evidence in the light most favorable to the nonmoving party, it can say as a matter of law that neither substantial evidence nor reasonable inference sustains a verdict for the nonmoving party. Id. "If any justifiable evidence exists on which reasonable minds might reach conclusions consistent with the verdict, the issue is for the jury." Id.

When a party asserts that a jury did not base its verdict on the evidence, courts determine whether substantial evidence existed to support the verdict and view all the evidence in the light most favorable to the non-moving party. Sommer v. Dep't of Soc. & Health Servs., 104 Wn. App. 160, 172, 15 P.3d 664 (2001). Substantial evidence is what "would persuade a fair-minded person of the truth or correctness of the matter." Erection Co., 160 Wn. App. at 202. There is a strong presumption that the verdict is correct. Bunch, 155 Wn.2d at 179.

Hart focuses most of her argument on whether the facts show that Nelson acted negligently. But the jury found Nelson acted negligently. Yet it apparently did not apportion any percentage of fault to Nelson because it determined that his negligence did not proximately cause Hart's injuries. Hart's briefing does not make any argument on why substantial evidence does not support the jury's finding on proximate cause, but states that Nelson's negligence "as a matter of undisputed fact caused and contributed to the single-car collision." Because Hart

does not provide argument on this issue, we may decline to review it. See Joy v. Dep't of Labor & Indus., 170 Wn. App. 614, 629-30, 285 P.3d 187 (2012) (citing RAP 10.3(a)(6)) (noting that an appellant's lack of reasoned argument on an issue does not merit judicial consideration).

But in considering the issue, we determine that substantial evidence supported the jury's determination. Viewing the evidence in the light most favorable to Nelson, he left his house to retrieve Sluka, his stepson. After he saw Sluka chasing Stanton, he tried to get Sluka to stop by signaling to him. Nelson then sped to 80 mph to intervene in the car chase and get Sluka to drive home. Once Sluka stopped following Stanton, Nelson also stopped following Stanton and turned off the road. The accident occurred after Nelson stopped following Stanton, when Stanton made a turn while driving over the speed limit.

Based on these facts, the jury could determine that Nelson's negligence did not cause the accident. Thus, substantial evidence supports the jury's finding. We determine the trial court did not err by denying Hart's motion for a judgment notwithstanding the verdict.

G. Loss of Earning Capacity Instruction

The trial court denied Hart's request to include "loss of earning capacity" as an element in the damages instruction. She claims this was error. Defendants Barker, Prather, and Knauer[11] claim Hart failed to present evidence

---

[11] Defendants Nelson, Stanton, and Evans did not address this issue in their briefing.

to support such an instruction.  We agree with these defendants.

We review a trial court's decision to deny a jury instruction for an abuse of discretion.  Hopkins v. Seattle Pub. Sch. Dist. No. 1, 195 Wn. App. 96, 104, 380 P.3d 584 (2016).  A court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds.  Breckenridge, 150 Wn.2d at 204.

"The propriety of a jury instruction is governed by the facts of the particular case."  Fergen v. Sestero, 182 Wn.2d 794, 803, 346 P.3d 708 (2015).  A party is entitled to instructions on their theory if it is supported by substantial evidence. State v. Rowley, 74 Wn.2d 328, 333-34, 444 P.2d 695 (1968).  Substantial evidence is what "would persuade a fair-minded person of the truth or correctness of the matter."  Erection Co, 160 Wn. App. at 202.

The "[i]mpairment of earning capacity . . . is the permanent diminution of the ability to earn money."  Murray v. Mossman, 52 Wn.2d 885, 889, 329 P.2d 1089 (1958).  Courts have determined that substantial evidence for a lost earning capacity instruction existed where the evidence showed "the plaintiff sustained severe and permanent injuries" and "although . . . able to return to work, [the plaintiff] was unable to work as well as before."  Levea v. G.A. Gray Corp., 17 Wn. App. 214, 225, 562 P.2d 1276 (1977) (citing Murray, 52 Wn.2d at 889).

Hart asserts that evidence that she no longer worked in the cooking industry as a chef[12] and that she often lays down during family events was alone sufficient to support a lost earning capacity instruction.  But neither of these facts

_____

[12] Hart testified that she completed culinary school and began a job as a chef.

shows the permanence or severity of Hart's injuries or relates to whether she could ever return to work or work as well as before. The trial court did not abuse its discretion in omitting lost earning capacity as an element of the damages instruction.

H. Contradictory and Irreconcilably Inconsistent Verdict

Hart claims that the trial court erred by denying her motion for a new trial because the jury's verdict is impossible to understand. Barker, the only defendant who responds to this claim, asserts that Hart's confusion is unfounded. We agree with Barker.

Again, we review a trial court's ruling on a motion for new trial for an abuse of discretion. Balisok, 123 Wn.2d at 117. A court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds. Breckenridge, 150 Wn.2d at 204.

When considering a claim of inconsistencies in a verdict, courts consider the jury's answers and do not substitute their judgment for the jury's. Mears v. Bethel Sch. Dist. No. 403, 182 Wn. App. 919, 927, 332 P.3d 1077 (2014). But if the verdict form's answers show a clear contradiction such that the court cannot determine how the jury resolved an ultimate issue, the court will remand for a new trial. Id.

Hart argues the verdict is impossible to understand because she cannot tell under Question 10 whether the future damages relate solely to one or more

25

of the accidents at issue.[13]  But Hart does not explain how the failure to divide the future damages based on accident renders the verdict impossible to understand. The form laid out amounts for past economic and non-economic damages and future economic and non-economic damages.  Nor does Hart explain how the jury's answers to Question 10 contradict any other part of the verdict form.

Hart also argues that the verdict is inconsistent because the jury determined that her injuries were divisible even though it was not provided with a definition of "indivisible injuries," and because the court allocated responsibility to the defendants for the judgment as if the injuries were indivisible.  These issues, however, do not relate to any inconsistencies with the verdict form.  Thus, we reject this claim.

We affirm.

_____
Chun, J.

WE CONCUR:

_____
Mann, C.J.

_____
Verellen, J.

---

[13] Question 10 asked, "What do you find to be the total amount of plaintiff's damages resulting from some or all of the collisions, if any, from March 22, 2014 to the present (lines A and B below), and into the future (lines C and D below)?"